**MEAD DATA CENTRAL, INC.,**
**Appellant,**

v.

**UNITED STATES DEPARTMENT OF the AIR FORCE, et al.**

**No. 75–2218.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1976.

Decided Aug. 30, 1977.

Rehearing and Rehearing en banc denied Nov. 28, 1977.

As Amended Sept. 27, 1977.

Robert N. Sayler, Washington, D. C., for appellant.

Michael H. Stein, Atty., Dept. of Justice, Washington, D. C., for appellees. Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Leonard Shaitman, Ronald R. Glancz, and Karen K. Siegel, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before DANAHER, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

Opinion for the court filed by TAMM, Circuit Judge.

Dissenting opinion filed by McGOWAN, Circuit Judge.

TAMM, Circuit Judge:

Mead Data Central, Inc. appeals from a judgment of the United States District

Court for the District of Columbia, 402 F.Supp. 460, holding that seven documents relating to a licensing agreement between the United States Department of the Air Force and West Publishing Co. need not be disclosed under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970 & Supp. V 1975), because they fall within exemption five of the FOIA.[1] While we agree with the district court that the attorney-client privilege and the deliberative process privilege are essential ingredients of exemption five, we find that both the Air Force and the district court applied interpretations of the scope of those privileges that are impermissibly broad, and accordingly remand the case to the district court for further consideration under the narrower constructions set forth in this opinion. We also hold that the Air Force did not adequately justify its claim that there was no non-exempt information which was reasonably segregable, and direct that agency segregability decisions be accompanied by adequate descriptions of the documents' content and articulate the reasons behind the agency's conclusion.

## I. BACKGROUND

In early 1975, Mead Data filed a FOIA request with the Air Force seeking disclosure of several categories of documents dealing generally with the Department's "Project FLITE," a computerized legal research system.[2] The Air Force agreed to

disclose some of the requested documents, but the Chief of the General Litigation Division of the Office of The Judge Advocate General advised Mead Data by letter that eight of the documents would be withheld. J.A. at 7–8. He provided a very brief description of each document[3] and asserted that "[t]he foregoing are exempt from disclosure under . . . 5 U.S.C. 552(b)(5), as attorney work products or intra-agency memoranda." J.A. at 8. Mead Data appealed this decision to the Office of the Secretary and was informed that, although one of the eight documents would be disclosed,[4] the remaining seven would not. The Air Force characterized three of these seven documents as legal opinions of Air Force attorneys advising their client as to applicable law and recommending courses of action with respect to Project FLITE. The other four were described as internal memoranda prepared by Air Force employees, which reflect the course of negotiations between the Air Force and West Publishing Co. for a licensing agreement to use the copyrighted West key number system and offer recommendations as to negotiating positions.[5] The Air Force claimed that the legal opinions fell within the attorney-client privilege incorporated into exemption five of the FOIA, and that the internal memoranda were also covered by that exemption because their disclosure would adversely affect the decisional process within the Air Force by inhibiting the expression of candid opinions. J.A. at 9–10.

1. Exemption five provides that the FOIA does not apply to:
 inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
 5 U.S.C. § 552(b)(5) (1970).

2. FLITE is an acronym for Federal Legal Information Through Electronics.

3. Three of the documents were characterized as legal opinions, four as memoranda, and one as a letter. The source and recipient of some were identified, and the subject of each was described by either a phrase or a single sentence. For example, the first document was listed as:
 Legal opinion, subject: Release of LITE Materials, 5 Sep. 74, from the Office of The Judge Advocate General, USAF, Litigation

Division to the Office of The Judge Advocate General, USAF, Patents Division; reference West Publishing Company.
The third was listed as:
 Memo, undated, subject: West Negotiations. J.A. at 7.

4. The document disclosed was a letter from one Air Force colonel to another concerning international computer resources. The Air Force continued to assert that it fell within exemption five as an intra-agency memorandum but concluded that since its contents had already been revealed to a senator and his constituent no significant governmental purpose would be served by withholding it. J.A. at 10.

5. Mead Data was given a copy of the final licensing agreement which resulted from these negotiations. J.A. at 10.

Mead Data filed suit in the United States District Court for the District of Columbia seeking an injunction to compel the disclosure of the withheld documents. During the court proceedings the Air Force submitted two affidavits offering more detailed descriptions of the contents of the documents and the bases for nondisclosure. Taken together these affidavits described the seven withheld documents as follows: [6]

1. A legal opinion, addressed to the Patents Division of the Office of The Judge Advocate General of the Air Force and prepared by attorneys in the Litigation Division of the same Office, as to whether copyrighted material which the Air Force converts to machine-readable form would be subject to disclosure under the FOIA. It also reflects an orally communicated opinion of a Justice Department attorney on the same matter and does not contain any factual material.

2. The request from the Patents Division which asked for the legal opinion labeled document 1. It reflects the status of the negotiations with West at the time of the request and asks for legal advice on how best to facilitate the on-going negotiations. It does not represent a final agency position in the negotiations.

3. An undated, unsigned memorandum prepared in the Patents Division which sets forth for Air Force policy makers the offers and counter-offers in the negotiations between West and the Air Force regarding the licensing agreement to permit the Air Force to use copyrighted materials belonging to West. It contains predecisional information about ongoing negotiations.

4. A legal opinion prepared by the Patents Division setting forth the background and negotiations with West and providing a legal rationale as to why a license from West would be necessary. It contains legal conclusions regarding the licensing agreement and recommendations as to what course the negotiations should take.

5. A memorandum to the Chief of the Patents Division from the Office of the Assistant General Counsel of the Department of Defense commenting on the legal conclusions in the opinion labeled document 4. It also sets forth views on justifying to a congressional committee the obtaining of a license for storage and retrieval of copyrighted legal information. It does not contain any information other than legal opinions and conclusions.

6. A handwritten, undated memorandum for the file prepared by a member of the Patents Division regarding a meeting between representatives of the Air Force and West to discuss prospects of the Department obtaining a license to use West's copyrighted materials. It reflects discussions among Air Force personnel regarding West's negotiations and current offers. The discussions regard predecisional views as to what positions the Air Force should consider in the negotiations.

7. A handwritten, undated memorandum prepared by a member of the Patents Division regarding a telephone conversation with another Air Force employee on the staff of LITE [7] regarding the position of the LITE staff as to negotiations with West for a license to use copyrighted

---

**6.** The description of the documents given in the text is not an exact quote of the affidavits submitted by the Air Force, but it is a close paraphrase of their language, combined into a single description with duplication deleted. *See* J.A. at 28–33.

Discussion of documents 1, 4 & 5 may be found in the text at pages ——–—— of 184

U.S.App.D.C., at pages 252–255 of 566 F.2d; of document 3 at pages ——–—— of 184 U.S. App.D.C., at pages 255–258 of 566 F.2d; and of documents 6 & 7 at pages ——–—— of 184 U.S.App.D.C., at pages 255–257 of 566 F.2d, *infra.*

**7.** LITE (Legal Information Through Electronics) was an earlier title for Project FLITE.

materials in the LITE data base. It reflects West's negotiations and current offers, and predecisional views as to what positions the Air Force should consider in the negotiations.

In one of the affidavits the Chief of the General Litigation Division also amplified the reasons for his initial decision to deny disclosure. He stated that there were no factual portions of the documents which could be reasonably segregated, that they were all part of the deliberative process of the Air Force in negotiating a licensing agreement with West, and that disclosure would impair the deliberative process within the Air Force by inhibiting the free and frank exchange of ideas among Air Force personnel. J.A. at 31–32.

The parties filed cross-motions for summary judgment, and following an *in camera* inspection of the seven documents, the district court entered a judgment in favor of the Air Force. The court noted that although the Air Force's initial description of the withheld documents hardly comported with the requirements of *Vaughn v. Rosen*[8] and *Cuneo v. Schlesinger*,[9] the elaborated description contained in the affidavits it had submitted to the court was adequate. On the merits, the court held that documents 1, 4, and 5 fall within the attorney-client privilege of exemption five and that documents 2, 3, 6, and 7 fit squarely within the same exemption because they reflect ongoing developments in a government negotiating process and discuss obstacles, alternatives, and recommendations as the agency progresses toward a final decision.

J.A. at 39–41. Finally, the court stated that on the basis of its examination of the documents there is no factual or other non-exempt material which can be segregated and disclosed, and that disclosure of these documents would be harmful to future deliberations and contract negotiations. *Id.* at 41–42.

## II. PROCEDURAL REQUIREMENTS

The dispute between the parties in this case over whether the information sought by Mead Data is within exemption five of the FOIA centers basically around the question of how that information ought to be characterized. Mead Data contends that the information is purely factual and that consequently its disclosure would not adversely affect the Air Force's deliberative process. The Air Force argues to the contrary and insists that the documents withheld consist of advisory opinions, recommendations, and other deliberative material that fall squarely within exemption five.

▪ Where there is such a factual dispute over the nature of the information sought in a FOIA suit, the lack of access of the party seeking disclosure undercuts the traditional adversarial theory of judicial dispute resolution. *Vaughn v. Rosen (Vaughn I)*, 157 U.S.App.D.C. 340, 344–45, 484 F.2d 820, 824–25 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Although *in camera* inspection of the disputed documents may compensate somewhat for this deficiency, it is a far from perfect substitute.[10] Moreover, as this court held in *Vaughn I, supra*, 157 U.S.App.

---

**8.** 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**9.** 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**10.** *In camera* inspection of disputed documents places very burdensome demands on federal trial courts, and it is unreasonable to expect the courts to do as thorough an investigation as would a party interested in forcing disclosure, particularly where the documents involved run to hundreds or thousands of pages. *See Weissman v. CIA*, 179 U.S.App.D.C. 184, at ——, 565 F.2d 692, at 695, n.4 (1977); *Vaughn I,*

*supra*, 157 U.S.App.D.C. at 345, 484 F.2d at 825. *In camera* inspection also creates problems for appellate review. District court opinions, like the one in this case, are generally stated in conclusory terms, and the disappointed requestor is not in a position to challenge those conclusions or even to assist the appellate court in focusing its inquiry. *Vaughn I, supra*, 157 U.S.App.D.C. at 345, 484 F.2d at 825. *See generally* Project, *Government Information and the Rights of Citizens*, 73 Mich.L. Rev. 971, 1124–27 (1975); Comment, *In Camera Inspections Under the Freedom of Information Act*, 41 U.Chi.L.Rev. 557, 558–61 (1974).

D.C. at 345, 484 F.2d at 825, the burden which the FOIA specifically places on the Government to show that the information cannot be satisfied by the sweeping and conclusory citation of an exemption plus submission of disputed material for *in camera* inspection. *Id.*, 157 U.S.App.D.C. at 345–46, 484 F.2d at 825–26. Thus, we require that when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply. *See Pacific Architects & Engineers, Inc. v. Renegotiation Board,* 164 U.S.App.D.C. 276, 278, 505 F.2d 383, 385 (1974); *Vaughn I, supra,* 157 U.S.App.D.C. at 346–48, 484 F.2d at 826–28. *See also Schwartz v. IRS,* 167 U.S.App.D.C. 301, 305, 511 F.2d 1303, 1307 (1975).

■ Mead Data highlights the district court's conclusion that the Air Force's "grudging revelation at the administrative level . . . hardly comports with the procedures outlined in *Vaughn v. Rosen,*" J.A. at 37 (emphasis deleted), and argues that the supplemental description provided by the affidavits submitted after suit was filed cannot be considered in our decision as to whether the Department has met its procedural obligations. We agree with Mead Data that the objective of the *Vaughn* requirements, to permit the requesting party to present its case effectively,[12] is equally applicable to proceedings within the agency. We cannot agree, however, that failure to follow those procedures in the administrative review of a FOIA request is a valid reason for an appellate court to reverse the judgment of a district court that the requested information is exempt, where those requirements have been satisfied in the district court proceeding.

■ In a FOIA action the district court is not limited to review of the quality of agency decision-making. It decides a claim of exemption *de novo,* and the agency's opinions carry no more weight than those of any other litigant in an adversarial contest before a court. We do not excuse the Air Force's failure to provide Mead Data with sufficient detail about the nature of the withheld documents and its exemption claims at the administrative level, but for purposes of this case those inadequacies are irrelevant. We are not reviewing the agency's decision or even the district court's approval of an agency decision. We are reviewing only the district court's independent and *de novo* decision that the information withheld by the Air Force is indeed protected from disclosure by exemption five. If we are to reverse the trial judge, Mead Data must show that either he incorrectly decided that the requested information was exempt[13] or that it was deprived of the opportunity to effectively present its case to the court because of the agency's inadequate description of the information withheld and exemptions claimed.

■ Considering the elaborated description and justification provided by the Air Force's affidavits, we agree with the district court that the withheld documents were described in sufficient detail to allow Mead Data to argue effectively against the Department's exemption claims. In this respect, the present case is far different from the situation which sparked the remand in *Vaughn I*—broad, sweeping, generalized claims under several exemptions covering voluminous information running many hundreds of pages. *See* 157 U.S.App.D.C. at 345–46, 484 F.2d at 825–26. The documents withheld by the Air Force in this case con-

---

11. 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975); *EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Washington Research Project, Inc. v. Department of HEW,* 164 U.S.App.D.C. 169, 175, 504 F.2d 238, 244 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

12. *See Cuneo v. Schlesinger, supra,* 157 U.S.App.D.C. at 373, 484 F.2d at 1091.

13. In order to show that the district court's decision was incorrect as a substantive matter, Mead must establish that it was either based on an error of law or a factual predicate which is clearly erroneous.

sist of less than 30 pages. The source, subject matter, and nature of each document were described separately, and although not individually stated for each document, it is clear from the nature of the documents and the single exemption asserted which justifications apply to which documents.

## III. EXEMPTION FIVE CLAIMS

■ Exemption five of the FOIA exempts from mandatory disclosure those matters that are "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1970). Although Congress clearly intended to refer the courts to discovery principles for the resolution of exemption five disputes, the situations are not identical,[14] and the Supreme Court has recognized that discovery rules should be applied to FOIA cases only "by way of rough analogies."[15] Accepting this "rough analogy" rule as a guiding principle and bearing in mind that FOIA exemptions should be narrowly construed,[16] we turn to the particular documents at issue.

### A. Legal Opinions

■ The district court held that exemption five permitted the Air Force to withhold documents 1, 4, and 5 because they contained information which qualifies for protection under the attorney-client privilege—confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.[17] We agree that the attorney-client privilege has a proper role to play in exemption five cases. The policy objective of that privilege is certainly consistent with the policy objective of the exemption. Exemption five is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers. Certainly this covers professional advice on legal questions which bears on those decisions. The opinion of even the finest attorney, however, is no better than the information which his client provides. In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent. We see no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five.

Other courts have also found that exemption five encompasses the attorney-client privilege. In NLRB v. Sears, Roebuck & Co.,[18] although the Supreme Court rested its holding on the narrower privilege for an attorney's work product,[19] which is restricted to material prepared in anticipation of

---

**14.** A court's decision in a discovery case may rest in part on an assessment of the particularized need of the party seeking discovery, but in a FOIA suit, the court does not consider the needs of the requestor. See EPA v. Mink, supra, 410 U.S. at 86, 93 S.Ct. 827; Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 243–44, 450 F.2d 698, 704–05 (1971). In addition, different rules may be applied to a discovery demand against the Government depending on whether the Government is acting as prosecutor, civil plaintiff, or defendant. EPA v. Mink, supra, 410 U.S. at 86, 93 S.Ct. 827.

**15.** EPA v. Mink, supra, 410 U.S. at 86, 93 S.Ct. 827.

**16.** Vaughn I, supra, 157 U.S.App.D.C. at 343, 484 F.2d at 823 & n.11. Congress was aware that an overbroad interpretation of exemption five could nearly nullify the disclosure mandate of the FOIA and indicated that it should be applied "as narrowly as consistent with efficient Government operation." S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); see H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966).

**17.** See generally United States v. Pipkins, 528 F.2d 559, 562 (5th Cir.), cert. denied, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); In re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir. 1975); J. P. Foley & Co. v. Vanderbilt, 65 F.R.D. 523, 526 (S.D.N.Y.1974); International Business Machines Corp. v. Sperry Rand Corp., 44 F.R.D. 10, 12 (D.Del.1968); NLRB v. Harvey, 264 F.Supp. 770, 772 (W.D.Va.1966).

**18.** 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

**19.** Id. at 154–55, 95 S.Ct. 1504. See also Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); J. H. Rutter Rex Mfg. Co. v.

litigation, it recognized that the attorney-client privilege is also included in exemption five.[20] *Porter County Chapter of Izaak Walton League of America v. AEC,* 380 F.Supp. 630 (N.D.Ind.1974), held that papers containing legal advice from staff counsel of the Atomic Energy Commission were exempt from disclosure under exemption five, reasoning that the threat of disclosure of the advice they received would "severely impede lawyer-client communications within a governmental agency." *Id.* at 633.

■■■ The Air Force's description of documents 1, 4, and 5 adequately demonstrates that the information in those docu-

ments was communicated to or by an attorney as part of a professional relationship in order to provide the Air Force with advice on the legal ramifications of its actions. To that extent it satisfies most of the necessary conditions for application of the attorney-client privilege.[21] The privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship, however.[22] It must also be demonstrated that the information is confidential.[23] If the information has been or is later shared with third parties, the privilege does not apply.[24]

■■■ The description of documents 1 and 5 gives no indication as to the confiden-

---

NLRB, 473 F.2d 223, 234 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973); *In re Natta,* 410 F.2d 187, 191–94 (3rd Cir.), *cert. denied,* 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969).

20. 421 U.S. at 154, 95 S.Ct. 1504. The Court noted that the legislative history of exemption five explicitly provides that it "would include . . . documents which would come within the attorney-client privilege if applied to private parties." S.Rep.No.813, *supra* note 16, at 2.

Although traditionally the attorney-client privilege has rested on the need to foster a relationship of trust and free discussion between a lawyer and a private client, there are decisions which have applied it to deny a discovery request directed toward a government. *Hearn v. Rhay,* 68 F.R.D. 574, 579 (E.D.Wash. 1975); *People v. Glen Arms Estate, Inc.,* 230 Cal.App.2d 841, 41 Cal.Rptr. 303, 310 (1st Dist. 1965); *see* McCormick on Evidence § 88, at 181 & n.34 (E. Cleary ed. 1972); *cf. United States v. Alu,* 246 F.2d 29, 33–34 (2d Cir. 1957) (principle that lawyer should not be witness for his client applicable to government as well as private attorneys).

21. Mead Data argued that the attorney-client privilege cannot be applied to these documents because they were exchanged between one attorney and another. "Attorney" and "client" are not mutually exclusive classes, however, and simply because one is educated or even employed as a lawyer should not debar him from seeking professional legal counsel with the assurance that his communications will not be subject to disclosure without his assent. *See Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26, 37 (D.Md.1974); *cf.* note 24, *infra* (cases cited for proposition that privilege is not lost because client's attorney consults other attorneys about subject matter of the communication).

22. *See United States v. Pipkins, supra,* 528 F.2d at 562–63; *United States v. Silverman,* 430 F.2d 106, 121–22 (2d Cir. 1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971).

23. *United States v. McDonald,* 313 F.2d 832 (2d Cir. 1963); *In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029, 1033 (S.D.N.Y.1975); *Doe v. A Corp.,* 330 F.Supp. 1352, 1355 (S.D.N.Y.1971), *aff'd sub nom., Hall v. A Corp.,* 453 F.2d 1375 (2d Cir. 1972).

24. *See United States v. Simpson,* 154 U.S.App. D.C. 350, 352, 475 F.2d 934, 936 (D.C. Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 140, 38 L.Ed.2d 91 (1973); *United States v. Tellier,* 255 F.2d 441, 447 (2d Cir.), *cert. denied,* 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); *Cafritz v. Koslow,* 83 U.S.App.D.C. 212, 167 F.2d 749, 751 (1948). The fact that the communication at issue in this case may have been circulated among more than one employee of the Air Force does not necessarily destroy their confidentiality, however. Where the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication. *Natta v. Hogan,* 392 F.2d 686, 692 (10th Cir. 1968); *Hearn v. Rhay, supra,* 68 F.R.D. at 579; *Garrison v. General Motors Corp.,* 213 F.Supp. 515 (S.D.Cal.1963); *Philadelphia v. Westinghouse Elec. Corp.,* 210 F.Supp. 483 (E.D.Pa.1962). *But see Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 491–92 (7th Cir. 1970), *aff'd per curiam by equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) (privilege applies so long as subject of employee's communication was performance of duties of his employment). *See generally* Note, *Attorney-Client Privilege for Corporate Clients: The Control Group Test,*

tiality of the information on which they are based. It simply states the subject, source, and recipient of the legal opinion rendered. In the federal courts the attorney-client privilege does extend to a confidential communication from an attorney to a client,[25] but only if that communication is based on confidential information provided by the client.[26] The Air Force has not shown that the information on which the legal opinions in documents 1 and 5 were based meets this confidentiality requirement,[27] and since the FOIA places the burden on the Government to prove the applicability of a claimed privilege, the court could not assume that it was confidential. We therefore reverse the district court's judgment that documents 1 and 5 are covered by the attorney-client privilege component of exemption five. On remand, the court should order disclosure of these documents unless the Air Force demonstrates either that the attorney-client privilege does apply to these documents because the information on which they are based was supplied by the Air Force with the expectation of secrecy and was not known by or disclosed to any third party, or that they fall within exemption five for some other reason.[28]

84 Harv.L.Rev. 424 (1970). Moreover, the privilege is not lost because an attorney consults other attorneys about the subject matter of the communication. *New York Underwriters Ins. Co. v. Union Construction Co.*, 285 F.Supp. 868 (D.Kan.1968); *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 360 (D.Mass. 1950).

**25.** *United States v. Osborn*, 409 F.Supp. 406, 409 (D.Ore.1975). It has been argued that the policy objective of the attorney-client privilege *to encourage frank and full disclosure of the realities of a client's situation to his attorney,* might still be achieved if the privilege were narrowly construed to apply only to communications of the client and not the advice and opinions provided by his attorney. *See* McCormick on Evidence, *supra* note 20, at 182. As applied in the federal courts, however, the privilege has consistently included communications of the attorney to the client as well as vice versa. *See, e. g., Garner v. Wolfinbarger,* 430 F.2d 1093, 1096 n.7 (5th Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *Schwimmer v. United States,* 232 F.2d 855, 863 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); *8 in 1 Pet Products, Inc. v. Swift & Co.,* 218 F.Supp. 253 (S.D.N.Y.1963); *United States v. United Shoe Machinery Corp., supra*; 8 Wigmore on Evidence § 2320 (McNaughton rev. 1961). When the discovery privilege is transposed to the FOIA context there is even more reason to adopt the wider scope, since exemption five is explicitly intended to encourage the free flow of advisory opinions and recommendations within an agency.

**26.** *Community Savings & Loan Ass'n v. Federal Home Loan Bank Bd.,* 68 F.R.D. 378, 382 (E.D.Wis.1975).

**27.** The descriptions of documents 1 and 5 themselves say nothing about the source of the information on which the opinions set forth in those documents were based. The description of document 2, however, does provide at least an indirect indication of the information base for that document. The Air Force describes document 2 as the request which asked for the legal opinion given in document 1 and states that this request reflects the status of negotiations between West Publishing Co. and the Air Force at the time of the request. It appears reasonable to infer that at least part of the factual predicate for the opinion in document 1 was an account of the course of negotiations between West and the Air Force. Nevertheless, this inference does nothing to support the Air Force's claim of privilege, for, as we explain with respect to the similar factual basis of document 4, it is far more likely that this information was not confidential than that it was. *See* notes 29–31 *infra* and accompanying text.

The only indication of the information base for document 5 is that it is in part a comment on the legal opinion given in document 1 and must be based to that extent on the facts described in document 4. Of course, since we find that the description of the factual basis of document 4 is insufficient to support the claim of privilege for document 4, it is equally unavailing to the claim for document 5.

**28.** With respect to documents containing legal opinions and advice, there is no doubt a great deal of overlap between the attorney-client privilege component of exemption five and its deliberative process privilege component. The distinction between the two is that the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts, while the deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts unless they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process. On remand the district court may well conclude that, although these documents are not exempt by the attorney-client privilege, they are nonethe-

■ The description of document 4 does offer some indication of the facts on which the legal opinion provided therein was based. It states that the document sets forth the background and negotiations with West Publishing Co. Far from supporting an inference that document 4 meets the confidentiality requirement of the attorney-client privilege, this cryptic description shows that at least part of its information base was not confidential. To the extent that it provides information as to what was offered to West Publishing Co. and what West offered in return, it does not meet the confidentiality test of the attorney-client privilege since that information is also known by West itself.[29] Furthermore, the background facts provided could easily be

information which is not restricted to the Air Force personnel directly responsible for the negotiations and therefore not confidential for purposes of this privilege.[30] Therefore, we must also reverse the district court's judgment that document 4 is exempt from disclosure because of the attorney-client privilege, and direct that on remand this document be ordered disclosed unless adequate proof of confidentiality is provided or the court finds that some other privilege justifies nondisclosure.[31]

### B. Internal Memoranda

■ The district court decided that the remaining documents, documents 2, 3, 6, and 7,[32] fit squarely within exemption five

less still free from mandatory disclosure under the deliberative process privilege. Such a result will be more than a mere switch in rationales without substantive impact. If these documents are exempt only because of the deliberative process privilege, the district court must require the Air Force to describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents. See Part V. infra.

Our dissenting brother structures his concern relative to the attorney-client privilege in sound generalities which unfortunately disregard the basic fact that this case arises under the Freedom of Information Act. The documents under discussion constitute but a small part of substantial exchanges of correspondence involving a potential licensing agreement between a government agency and a private business enterprise. The court's problems in this particular case grow out of its need to reconcile one of the enumerated exemptions enacted to protect important interests in confidentiality with the overall congressional intent of ensuring comprehensive public access to government records.

While the attorney-client privilege retains its essential vitality within our prevailing jurisprudence, as in this case there are bound to be situations when the items to which it may apply by "rough analogy" must be evaluated in relation to the laws governing such privileges and the general precept that the FOIA's exemptions are to be narrowly construed. In situations such as now confront us, courts must objectively weigh the merits and requirements of each contention, evaluate the contentions of the parties in light of all applicable law, and rule in accord with the dominant interest of either confidentiality or public access. This is, we submit, precisely what the court has done in this case. It has found that, at least on the

present record, portions of the documents in dispute may lie outside the properly defined scope of the attorney-client privilege and consequently is remanding the case to the district court for further proceedings necessary to a proper resolution of this issue.

**29.** See United States v. Osborn, supra, 409 F.Supp. at 410; In re Langswager, 392 F.Supp. 783, 786 (N.D.Ill.1975); cf. Himmelfarb v. United States, 175 F.2d 924, 939 (9th Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949); In re Grand Jury Subpoena, 406 F.Supp. 381 (S.D.N.Y.1975); United States v. Mitchell, 372 F.Supp. 1239, 1245 & n.4 (S.D.N.Y.1973).

**30.** See generally Note, Attorney-Client Privilege for Corporate Clients: The Control Group Test, 84 Harv.L.Rev. 424 (1970).

**31.** See note 28 supra.

**32.** Document 2 is a request from the Air Force's Patents Division for the legal advice of the Litigation Division. Although the district court did not consider the application of the attorney-client privilege to this document, we note that it is just the kind of communication which the privilege is designed to protect—information communicated from a client to an attorney for the purpose of obtaining the attorney's professional legal opinion. Indeed, the reason that an attorney's opinions and advice are privileged is to prevent an indirect disclosure of what the client disclosed to him when requesting counsel. See McCormick on Evidence, supra note 20, at 183 & nn.49–50; 8 Wigmore on Evidence, supra note 25, § 2320. Of course a claim of attorney-client privilege for the document would also have to meet the confidentiality requirement. See notes 22–31 supra and accompanying text.

since "each document reflects ongoing developments in a Government negotiating process" as documents wherein "[a]dvice, obstacles, alternatives, and recommendations are weighed and balanced."

■ It generally has been accepted that exemption five incorporates the governmental privilege, developed in discovery cases,[33] to protect documents containing advisory opinions and recommendations or reflecting deliberations comprising the process by which government policy is formulated.[34] Under this facet of exemption five, the courts have required disclosure of essentially factual material but allowed agencies to withhold documents which reveal their deliberative or policy-making processes.[35] The Supreme Court approved this approach in *EPA v. Mink*[36] and found it consistent with the discussion of a "factual—deliberative" distinction in the legislative history of exemption five.[37]

■ Congress adopted exemption five in recognition of the merits of arguments from the executive branch that the quality of administrative decision-making would be seriously undermined if agencies were forced to "operate in a fishbowl" because the full and frank exchange of ideas on legal or policy matters would be impossible.[38] A decision that certain information falls within exemption five should therefore rest fundamentally on the conclusion that, unless protected from public disclosure, information of that type would not flow freely within the agency.[39]

■ Many exemption five disputes may be able to be decided by application of the simple test that factual material must be disclosed but advisory material, containing opinions and recommendations, may be withheld. The test offers a quick, clear, and predictable rule of decision, but courts must be careful not to become victims of their own semantics. Exemption five is intended to protect the deliberative process of government and not just deliberative material. *Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 275–278, 491 F.2d 63, 68–71 (1974). Perhaps in the great majority of cases that purpose is well served by focusing on the nature of the information sought. In some circumstances, however, the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5).[40] *See Brockway v. Department of the Air Force*, 518 F.2d 1184, 1194 (8th Cir. 1975); *Montrose Chemical Corp., supra; Amway*

**33.** *See Freeman v. Seligson*, 132 U.S.App.D.C. 56, 69, 405 F.2d 1326, 1339 (1968); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 323–25 (D.D.C.1966), aff'd per curiam sub nom. *Carl Zeiss, Jena v. Clark*, 128 U.S.App. D.C. 10, 384 F.2d 979, *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F.Supp. 939, 945–46, 141 Ct.Cl. 38 (1958).

**34.** *See Brockway v. Department of Air Force*, 518 F.2d 1184, 1191 (8th Cir. 1975); *National Courier Ass'n v. Board of Governors of Federal Reserve System*, 170 U.S.App.D.C. 301, 314, 516 F.2d 1229, 1242 (1975).

**35.** *See Schwartz v. IRS*, 167 U.S.App.D.C. 301, 303, 511 F.2d 1303, 1305 (1975); *Ethyl Corp. v. EPA*, 478 F.2d 47, 49–51 (4th Cir. 1973); *Soucie v. David*, 145 U.S.App.D.C. 144, 154–55, 448 F.2d 1067, 1077–78 (1971).

**36.** 410 U.S. at 89–91, 93 S.Ct. 827.

**37.** *Id.* at 89–90, 93 S.Ct. 827.

**38.** *See* S.Rep.No.813, *supra* note 16, at 9; H.R. Rep.No.1497, *supra* note 16, at 10. *See generally* Katz, *Games Bureaucrats Play—Hide and Seek Under the Freedom of Information Act*, 48 Tex.L.Rev. 1261, 1272–77 (1970); Comment, *The Freedom of Information Act and Its Internal Memoranda Exemption: Time for a Practical Approach*, 27 Sw.L.J. 806 (1973).

**39.** *See* Comment, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda*, 86 Harv.L.Rev. 1047, 1057 (1973).

**40.** There may also be circumstances in which what might easily be labeled "deliberative" rather than "factual" material must be disclosed because it would not reveal the deliberative process within the agency. *See, e. g., Vaughn v. Rosen (Vaughn II)*, 173 U.S.App. D.C. 187, 196, 523 F.2d 1136, 1145 (1975) (Civil Service Commission's evaluation of other federal agencies' personnel management programs not exempt); *Moore-McCormack Lines, Inc. v. I.T.O. Corp.*, 508 F.2d 945, 948 (4th Cir. 1974) (records of inferences drawn by agency investigator not exempt).

*Corp. v. FTC*, 1976–1 Trade Cas. ¶ 60,798, at 68,445 (D.D.C.1976); *Mobil Oil Corp. v. FTC*, 406 F.Supp. 305, 315 (S.D.N.Y.1976). *See also Kent Corp. v. NLRB*, 530 F.2d 612, 620 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976).

 Mead Data argues that documents 6 and 7 are "reportorial and factual in nature rather than policy deliberative," Brief for Appellant at 21, because they only provide summaries of discussions among Air Force staff relating to the negotiating positions of the Department and West Publishing Co. and do not affirmatively make recommendations or offer opinions. Discussions among agency personnel about the relative merits of various positions which might be adopted in contract negotiations are as much a part of the deliberative process as the actual recommendations and advice which are agreed upon. As such they are equally protected from disclosure by exemption five. *See Ash Grove Cement Co. v. FTC*, 171 U.S.App.D.C. 285, 286, 519 F.2d 934, 935 (1975). It would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only "report" what those recommendations and opinions are. The evaluations, opinions, and recommendations reported in documents 6 and 7 are the raw materials which went into the decision of the Air Force to contract with West Publishing Co. on certain terms. This is not a case like *Schwartz v. IRS*[41] or *Sterling Drug Inc. v. FTC*[42] where an agency is attempting to invoke exemption five to protect the private transmittal of binding agency opinions and interpretations. The policy of promoting the free flow of ideas within an agency by guaranteeing protection from disclosure is therefore fully applicable to this information, and we hold that to the extent documents 6 and 7 reflect

the views and opinions of Air Force staff on the state of negotiations between the Air Force and West Publishing—the potential problems and available alternatives—they are exempt from disclosure under the FOIA by section 552(b)(5).[43]

 Document 3 consists entirely of a running summary of the offers and counter-offers made by each side in the Air Force's negotiations with West Publishing Co. The Air Force insists that this information is exempt simply because it reflects negotiating positions of the parties which predate the final agreement on the contract terms. The district court apparently accepted this proposition, for in holding that documents 2, 3, 6, and 7 fit "squarely" within exemption five, it reasoned that "[e]ach document reflects ongoing developments in a Government negotiating process." J. A. at 40. We find this to be an entirely too broad reading of exemption five. Predecisional materials are not exempt merely because they are predecisional; they must also be a part of the deliberative process within a government agency. *Vaughn v. Rosen (Vaughn II)*, 173 U.S.App. D.C. 187, 195, 523 F.2d 1136, 1144 (1975). The documents in this case which would reveal the Air Force's internal self-evaluation of its contract negotiations, including discussion of the merits of past efforts, alternatives currently available, and recommendations as to future strategy, fall clearly within this test. Information about the "deliberative" or negotiating process outside an agency, between itself and an outside party, does not. Moreover, neither of the policy objectives which exemption five is designed to serve—avoiding premature disclosure of agency decisions and encouraging the free exchange of ideas among administrative personnel—is relevant to a claim of secrecy for a proceeding between

---

41. 167 U.S.App.D.C. 301, 511 F.2d 1303 (1975).

42. 146 U.S.App.D.C. 237, 450 F.2d 698 (1971).

43. The Air Force's description of documents 6 and 7 indicates that they may also contain accounts of the offers which were actually made to West Publishing Co. by the Air Force and the counter-offers West made in response. This part of those documents should be treated the same as the similar information in document 3. On the current record it does not qualify for exemption, and, if segregable, it must be disclosed.

an agency and an outside party. All of the information as to what the Air Force offered West Publishing, initially and in response to West's counter-offers, has already been fully disclosed to at least one party outside the Department—West itself—and the Department has no control over further disclosure.

■■■ Perhaps it could be shown that the threat of disclosure of negotiation proceedings would so inhibit private parties from dealing with the Government that agencies must be permitted to withhold such information in order to preserve their ability to effectively arrange for contractual agreements. *Cf. Brockway, supra,* 518 F.2d at 1193; *Machin v. Zuckert,* 114 U.S.App.D.C. 335, 316 F.2d 336, *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). Arguments that the disclosure mandated by the FOIA would seriously hamper the performance of an agency's other duties have not fared well in the courts, however.[44] An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm. It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA. *See Brockway, supra,* 518 F.2d at 1194.

Whatever might be shown with respect to the harm caused by disclosure of the offers and counter-offers made during negotiation of a government contract, the justification claimed by the Air Force in this case is far from sufficient. Unless far more compelling reasons are brought forth on remand and supported by adequately detailed proof,

the district court will have no option but to compel disclosure of document 3.

## IV. AIR FORCE REGULATIONS

■■■ Since the exemptions to the FOIA are permissive rather than mandatory, particularly with respect to information that does not raise issues of individual privacy rights, an agency may impose upon itself a more liberal disclosure rule than that required by the FOIA.[45] The Air Force has done just that by providing by regulation that even though a requested document or portion thereof falls within an exemption, it should nonetheless be disclosed "unless it is also determined that a significant and legitimate Government purpose would be served by exercising the exemption." 32 C.F.R. § 806.23 (1976). In view of the well-established principle that an agency is bound by its own regulations,[46] we must determine whether the Air Force has demonstrated such a purpose for withholding the documents at issue in this case.[47]

In both its initial reply to Mead Data's request and notification of the result of Mead Data's administrative appeal, the Air Force indicated that it would not disclose the information requested because to do so "would inhibit Air Force personnel from expressing their candid opinions in the future," J. A. at 8, "and adversely affect the decisional process within the Air Force." *Id.* at 10. In his affidavit, filed in the district court, the Chief of the Air Force's General Litigation Division reiterated that he had denied disclosure because it "would

---

**44.** *See Hawkes v. IRS,* 507 F.2d 481, 484 (6th Cir. 1974).

**45.** *See Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1197 (4th Cir. 1976), *cert. denied,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977); *Charles River Park "A", Inc. v. Department of HUD,* 171 U.S.App.D.C. 286, 292, 519 F.2d 935, 941 (1975); *Moore-McCormack, Inc. v. I.T.O. Corp., supra,* 508 F.2d at 950; S.Rep.No.93–854, 93d Cong., 2d Sess. 6 (1974); K. Davis, Administrative Law Treatise § 3A.5 (Supp.1970); Note, *Developments Under the Freedom of Information Act—1974,* 1975 Duke L.J. 416, 430–31.

**46.** *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *GSA v. Benson,* 415 F.2d 878, 880 (9th Cir. 1969).

**47.** We also bear in mind the principle that an agency's interpretation of its own rule is entitled to a presumption of validity. *See* K. Davis, Administrative Law Treatise § 30.12 (1958); *cf. Griggs v. Duke Power Co.,* 401 U.S. 424, 433– 34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Contractors Ass'n v. Secretary of Labor,* 442 F.2d 159, 175 (3d Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971).

impair the deliberative process in successfully negotiating a licensing agreement between the Air Force and West Publishing Company . . . by impairing the free and frank exchange of ideas among Air Force personnel." *Id.* at 31–32.

■■■ Mead Data argues that these reasons are too vague and speculative and that only a specific showing of the specific injury that would result from disclosure of each document would satisfy the regulation's requirement. Certainly, as we have reaffirmed above, an agency must show by detailed and specific justification that information it seeks to withhold from public disclosure falls within one of the exemptions to the FOIA. Once that is shown, however, the FOIA "does not apply," [48] and our review of the agency's decision whether to release it, nonetheless, is limited to determining whether the agency's action amounts to an abuse of discretion. *Charles River Park "A", Inc. v. Department of HUD*, 171 U.S.App.D.C. 286, 294, 519 F.2d 935, 943 (1975).

The exemptions from the mandatory disclosure requirement of the FOIA are both narrowly drafted and narrowly construed in order to counterbalance the self-protective instincts of the bureaucracy which, like any organization, would prefer to operate under the relatively comforting gaze of only its own members rather than the more revealing "sunlight" of public scrutiny. Where there is a balance to be struck, Congress and the courts have stacked the scales in favor of disclosure and against exemption. Exempt material represents only that small subset of government records for which Congress has determined that an absolute and generalized disclosure rule would do more harm than good and therefore has left the decision to the agencies to be made on a case-by-case basis. Since the public's right of access to government information is already well protected by the breadth of the disclosure requirement of the FOIA and since the agency's discretion is already confined to a narrow class of information, there is less need for exacting court scrutiny of an agency's decision not to disclose exempt material. Of course, we must require the Air Force to meet the standard it has set for itself, but in doing so we should not be quick to interpret the Department's regulation in derogation of the discretion which the FOIA has left to it.

■■■ The reasons which the Air Force initially provided, and later amplified, for its decision to deny disclosure are completely consistent with the policy objectives of exemption five and are clearly applicable to the type of information described in its communications to Mead Data and the district court. Mead Data does not contend that these were not in fact the concerns which prompted the Air Force's action. It simply attacks the merits of the Air Force's conclusion that they provide a significant and legitimate reason to withhold exempt material. We cannot say, in light of the record before us, that the Air Force abused its discretion in reaching that conclusion.

## V. SEGREGABILITY

Although the attorney-client privilege or the privilege protecting the deliberative process within agencies may apply to some of the material in the documents which the Air Force has withheld from Mead Data, it appears that these documents also contain information which is not exempt. The Air Force's description of the documents allegedly exempt under the attorney-client privilege indicates that they contain information which does not meet the confidentiality requirement of that privilege,[49] and the description of the documents withheld under the deliberative process privilege indicates that they contain information about

**48.** 5 U.S.C. § 552(b) (1970); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 147–48, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Charles River Park "A", Inc. v. Dep't of HUD, supra*, 519 F.2d at 942.

**49.** *See* notes 28–31 *supra* and accompanying text.

deliberations with a non-governmental party outside the agency.[50]

■ The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.[51] In 1974, Congress expressly incorporated that requirement into the FOIA,[52] which now states that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (Supp. V 1975).[53]

■ The Air Force did not address the segregability issue in its administrative responses to Mead Data. In an affidavit submitted to the district court it stated, however, that there "were no factual portions . . . which could be reasonably segregated." J. A. at 31. No supporting justification was offered for this conclusion, but the Air Force argues that its accuracy has been assured in this case because the district court reached the same decision after its in camera inspection of the documents. Both the decision of the Air Force and the district court, however, rest on overly broad interpretations of the attorney-client and deliberative process privileges. Neither considered the segregability of information in the documents covered by the attorney-client privilege which was not confidential since it had also been disclosed to West Publishing Co. Similarly, both the Department and the court erroneously extended the deliberative process privilege beyond the deliberative process within the agency to also include information about what offers and counter-offers were actually made in the negotiations with West.

It seems quite likely that this non-exempt material can be disclosed without compromising the secrecy of whatever exempt information remains. On remand, the Air Force should provide, to the court and Mead Data, a description of which parts of the withheld documents are non-exempt under the narrower construction of the applicable privileges given in this opinion, and either disclose them or offer adequate justification for continuing to withhold them.

■ We recognize that the question of segregability is completely dependent on the actual content of the documents themselves and that the requesting party is helpless to counter agency claims that there is no non-exempt and reasonably segregable material within a withheld document. It is no adequate answer to say that the courts are free to review the agency's conclusion after a full in camera inspection of the documents. Adding another layer of secret decision-making may increase the statistical chance of disclosure, and indeed, a judge is free of the self-interest in secrecy that might color an administrative official's decision. Nonetheless, in camera decisions in such situations are still essentially ex parte and unaided by the benefits of adversarial proceedings which buttress the validity of judicial decisions. As we have emphasized, the FOIA places the burden of justifying nondisclosure on the agency seeking to withhold information, and this burden cannot be shifted to the courts by sweeping, generalized claims of exemption for documents submitted for in camera inspection. See Vaughn I, supra, 157 U.S.App.D.C. at 345–46, 484 F.2d at 825–26.

---

**50.** See notes 43–44 supra and accompanying text.

**51.** See, e. g., Washington Research Project, Inc. v. Department of HEW, supra, 164 U.S.App. D.C. at 180, 504 F.2d at 249; Soucie v. David, supra, 145 U.S.App.D.C. at 154–55, 448 F.2d at 1077–78; Bristol-Myers v. FTC, 138 U.S.App. D.C. 22, 26, 424 F.2d 935, 939, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). The Supreme Court has also held that agencies must show that withheld documents contain "no separable factual information." EPA v. Mink, supra, 410 U.S. at 93, 93 S.Ct. 827, 35 L.Ed.2d 119.

**52.** Pub.L.No.93–502, § 2, 88 Stat. 1561 (1974).

**53.** The Air Force's own regulations require that "[i]f only a portion of the record is determined to be exempt, the rest of the record must be disclosed." 32 C.F.R. § 806.23 (1976); see id. § 806.25.

Thus if the Air Force decides to continue in its claim that the non-exempt material in these documents is not reasonably segregable after reconsideration pursuant to the remand of this case, it must provide a more detailed justification than the conclusory statements it has offered to date. We recognize that this requirement presents problems for the agency since, as noted above, segregability depends entirely on what information is in a document and how it is presented. Of course agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information. Nevertheless, unless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts.

█ In addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.[54] Armed with such a description, both litigants and judges will be better positioned to test the validity of the agency's claim that the non-exempt material is not segregable. For example, if only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted.[55] On the other extreme, if a large proportion of the information in a docu-

ment is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information. Of course it is the cases in between these extremes which, no doubt, will more frequently present themselves to the courts and provide the true test for the procedures we have suggested. We therefore urge that they not be viewed as a thaumaturgic formula, but as a potentially useful approach, to be tried and improved by experience, as the courts struggle to strike a balance between the unavoidably conflicting values implicated by the segregability requirement of the FOIA. *See Cuneo v. Schlesinger, supra,* 157 U.S.App.D.C. at 375, 484 F.2d at 1093 (Bazelon, C. J., concurring).

Certainly these procedures add significantly to the resource costs an agency must bear if it chooses not to disclosure material it has in good faith decided is exempt. Those burdens may be avoided at the option of the agency, however, by immediate disclosure. Congress has encouraged the agencies to disclose exempt material for which there is no compelling reason for withholding,[56] and an agency's own balancing of the resource costs of justifying nondisclosure against the value of secrecy may provide a rough estimate of how compelling is its reason for withholding.

█ Requiring a detailed justification for an agency decision that non-exempt material is not segregable will not only cause the agency to reflect on the need for secrecy and improve the adversarial posi-

---

**54.** If a document itself contains many pages of information, and there are logically divisible sections for which the proportion and distribution description would differ significantly, it should be described by section rather than as a whole.

**55.** Since the focus of the FOIA is information, not documents as a whole, and not simply words which the Government has written down, it should be legitimate to consider the information content of the non-exempt material which a FOIA plaintiff seeks to have segregat-

ed and disclosed. This does not mean that a court should approve an agency withholding because of the court's low estimate of the value to the requestor of the information withheld. It does mean that a court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.

**56.** S.Rep.No.93–854, *supra* note 45, at 6.

tion of FOIA plaintiffs, but it will also enable the courts to conduct their review on an open record and avoid routine reliance on *in camera* inspection. It is neither consistent with the FOIA nor a wise use of increasingly burdened judicial resources [57] to rely on *in camera* review of documents as the principal tool for review of segregability disputes. *See Vaughn I, supra,* 484 F.2d at 825–26. In *Weissman v. CIA,* we held that neither the legislative history of the statutory segregability requirement nor the court decisions it endorsed require the courts to conduct an *in camera* line-by-line analysis of withheld documents whenever a FOIA plaintiff claims that there may be non-exempt material which was reasonably segregable but not disclosed.[58] 184 U.S. App.D.C. ——, at —— ——, 565 F.2d 692,

at 697–698 (1977). If an agency has provided the description and justification suggested by this opinion, a district court need not conduct its own *in camera* search for segregable non-exempt information unless the agency response is vague, its claims too sweeping, or there is a reason to suspect bad faith.[59] *Id.* at ——, 565 F.2d at 698.

## VI. CONCLUSION

The district court's judgment that exemption five of the FOIA permits the Air Force to withhold all of the material in the seven documents at issue in this case rests on an impermissibly broad interpretation of the attorney-client privilege and the deliberative process privilege. We therefore remand the case for further proceedings under the narrower constructions outlined

57. *See* S.Rep.No.95–117, 95th Cong., 1st Sess. 8–9 (1977); Burger, 1977 *Report to the American Bar Association,* 63 A.B.A. Journal 504 (1977); McGowan, *Congress and the Courts,* 62 A.B.A. Journal 1588 (1976).

58. We fully recognize the inherent difficulty which arises in these situations. However, the Supreme Court has helped us with its treatment in III, A, (i) in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–54, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). We are not alone as we confess a certain degree of mystification even as we seek the specificity a particular problem may require. The late Mr. Justice Clark had even concluded that an occasion may arise when a district judge should designate a special master to examine documents and evaluate an agency's contention that exemption must be afforded. *See Irons v. Gottschalk,* 179 U.S. App.D.C. 37, 42, 548 F.2d 992, 997 (1976). We repeat what we have said, *supra,* that a segregability examination by the court, if required, will materialize only if and when the agency can propose no other recourse having in mind clearly that Congress has specified disclosure, not secrecy, as the desideratum.

59. Without doing their own search for segregable non-exempt information, the courts could selectively employ *in camera* inspection to verify the agency's descriptions and provide assurances, beyond a presumption of administrative good faith, to FOIA plaintiffs that the descriptions are accurate and as complete as possible. *See Ash Grove Cement Co. v. FTC,* 167 U.S. App.D.C. 249, 252, 511 F.2d 815, 818 (1975). If an agency knows that the court may compare the actual content of a court-selected random sample of withheld documents with the description provided to the public, it is less likely

to provide inaccurate or inadequate descriptions. This procedure would at least provide a mechanism for ensuring that the public record on the issue of segregability is as complete as possible and would avoid establishing the courts as additional layers of essentially secret decision-making.

Even limited-purpose *in camera* inspection may not be necessary to decide every segregability issue. In *Weissman v. CIA,* we held that the district court did not abuse its discretion in refusing to verify agency claims "[w]here it is clear from the record that an agency has not exempted whole documents merely because they contain some exempt material." 184 U.S. App.D.C. ——, at ——, 565 F.2d 692, at 698 (1977). We detailed the facts in the record that supported our holding as follows:

> The CIA dealt with the instant request in a conscientious manner. It disclosed much material, it released additional material as the result of an administrative appeal, and it came forward with newly discovered documents as located. Agency documents have been released to plaintiff-appellant on four separate occasions. The Agency submitted affidavits summarizing each document, or portion of a document withheld, and indicated the rationale for each claimed exemption. It filed an indexed description of all material withheld and supported the withholding by explicit affidavits.

*Id.* at ——, 565 F.2d at 698. In similar situations or where there are other compelling reasons not to doubt full administrative compliance with the segregability requirement of the FOIA, the choice whether to conduct *in camera* inspection should be left to the discretion of the district courts.

above and direct that the segregability inquiry be augmented by a more detailed justification of the Air Force's decision, accompanied by an indication of the proportion of the material which is non-exempt and how it is distributed throughout the documents.

*Remanded.*

McGOWAN, Circuit Judge, dissenting:

Since I find no significant fault with the District Court's disposition of this case, I would affirm the judgment under review. The record shows that the Air Force took seriously the FOIA request and voluntarily supplied a very substantial amount of the information requested. In the District Court proceeding, it also provided what seemed to the district judge—and now seems to me—detailed and informative descriptions of the nature and content of the seven documents in issue, which strongly suggest the availability of the claimed exemption. The district judge took the additional precaution, expressly envisaged by the statute, of examining those documents *in camera.* Under these circumstances I do not think this court on appellate review is warranted in questioning the result reached unless it plainly appears that he was proceeding on some erroneous legal assumptions—and none are visable to me. Though I am in essential agreement with the views expressed in the District Court's memorandum and order, I venture a comment on certain portions of the panel's opinion.[1]

First, with respect to the attorney-client privilege, I have grave doubts about some of the assumptions which seem to form the foundation of the majority's position. The majority apparently believes that, because West was privy to the course of contract negotiations between itself and the Air Force, the attorney-client privilege cannot apply to legal opinions rendered by Air Force legal officers to the service's contracting and other supervisory personnel. As I understand it, the logic proceeds as follows:

a) Only *confidential* communications can be covered by the attorney-client privilege.

1. The District Court may have erred if it assumed that, in order to justify a refusal to release particular documents, the Air Force was obligated to show that "their disclosure would in fact be harmful to future deliberations and contract negotiations." Recently, the Supreme Court had occasion to discuss FOIA's fifth exemption in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). In the course of its opinion, the Court cited with approval Justice Reed's comments on privileged government documents in *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 141 Ct.Cl. 38 (1958).

So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against public interest but not absolutely. It is necessary therefore to consider the circumstances around the demand for this document in order to determine whether or not its production is injurious to the consultative functions of government that the privilege of non-disclosure protects.

At 946 (footnote omitted).

Of course, the Court of Claims opinion in which these remarks appeared was written long before the passage of FOIA. In quoting Justice Reed's statement, the Supreme Court did not focus on the question of whether an individualized showing of potential harm to future government deliberations is a prerequisite to successful invocation of FOIA's fifth exemption. Arguably at least, by its enactment of the fifth exemption, Congress intended to make such a particularized showing unnecessary. The exemption may create a statutory presumption (whether conclusive or rebuttable we do not, and need not, say on this record) to the effect that disclosure of nondiscoverable intra-agency memoranda will harm internal government consultation and decision-making. If this interpretation is correct, it would render superfluous the District Court's specific finding that release of the documents here at issue would harm future government contract negotiations.

In this case, as the majority has indicated, the Air Force's own regulations provide that even records exempt from mandatory disclosure will be released unless it is "determined that a significant and legitimate Government purpose would be served by exercising the exemption." 32 C.F.R. § 806.23 (1976). The Air Force found that such a purpose would be served by a refusal to disclose the seven documents sought by appellant. Like the majority, I cannot say that this finding constituted an abuse of discretion. And, given its views on the likelihood of future harm, the District Court surely would have ruled similarly, if it had addressed the question in precisely this form.

b) Legal opinions rendered by counsel on the basis of information provided by a client can be privileged only if disclosure would tend to reveal the underlying information, and that information was provided in confidence.

c) West knew the details of its contract negotiations with the Air Force.

d) Therefore, the information provided to Air Force counsel was not confidential, and the resulting legal opinions are not privileged.

Adoption of this position would go a long way toward eliminating the attorney-client privilege altogether. In the vast majority of cases, attorney-client discussions concern the client's dealings or relationship with one or more third parties. The mere fact that those third parties are aware of the factual details of their interaction with the client cannot automatically defeat a claim of confidentiality asserted in connection with the client's recounting of that interaction to his attorney. If it could, legal opinions based in part on a client's version of prior negotiations with third parties would always be outside the scope of the privilege.

I think the majority errs in assigning such crucial importance to West's knowledge in this case. The key point is not whether West is familiar with the course of negotiations between the parties, but whether the Air Force's communication with its legal counsel was confidential, i. e., whether the Air Force legitimately expected that its summary of past events to its counsel would remain undisclosed. I do not see why it should not have had that expectation. There is no indication that West or any other third person was privy to the communications between the Air Force and its attorneys. There is no indication that the Air Force publicized, intended to publicize, or expected its attorneys to publicize the substance of those communications to anyone outside the service. That West was aware of some of the facts reported to the Air Force lawyers seems to me largely irrelevant.

Secondly, I think the majority has taken an unnecessarily restrictive view of what

constitutes the deliberative process. The opinion states that documents revealing "internal self-evaluation" of contract negotiations would be comprehended within the deliberative process privilege, but information about the actual progress of negotiations with a third party would not. This distinction seems to be untenable. Even a bare recitation of the offers and counter-offers between West and the Air Force cannot help but reflect internal agency decisions and negotiation strategy. Offers made in the course of contract negotiations do not inevitably represent final agency decisions, simply by virtue of the fact that such offers were made to private parties during the bargaining process. The preferable view, I think, is that final action occurs only when the agency definitively determines whether or not to enter into a contract. It is entirely possible, for example, that a particular contract offer was made to West in the full expectation that it would in all likelihood be refused, but would nevertheless lay the groundwork for a later, and substantially altered, proposal.

Finally, though I have no quarrel with the more detailed reporting on segregability which the majority would require from agencies generally, in this case I believe the majority has identified for segregation and disclosure certain matters which need not be segregated and disclosed. To the extent the court's opinion underestimates the coverage of the attorney-client and deliberative process privileges, it correspondingly overestimates the amount of non-exempt material in the seven contested documents which must be separated and released.