**MEAD DATA CENTRAL, INC.,**
Plaintiff,

v.

**U. S. DEPARTMENT OF the AIR
FORCE et al., Defendants.**

Civ. A. No. 75–927.

United States District Court,
District of Columbia.

Oct. 14, 1975.

Robert N. Sayler, Covington & Burling, Washington, D.C., for plaintiff.

Paul M. Tschirhart, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff brought this action under the Freedom of Information Act (Act), 5 U.S.C. § 552, to compel disclosure of seven documents relating to a licensing agreement between defendant Department of the Air Force and West Publishing Company. Defendants have invoked the fifth exemption of the Act, 5 U.S.C. § 552(b)(5), contending that three of the documents constitute privileged legal opinions and that the remaining four are intra-agency memoranda. The case is before the Court on Cross-Motions for Summary Judgment.

Throughout much of 1974, the Air Force engaged in negotiations with West Publishing Company concerning the expansion and improvement of the Air Force's computerized legal research system, LITE (subsequently know as FLITE, Federal Legal Information Through Electronics). The Air Force desired to utilize copyrighted West material (i.e., the key number system) in the data base of FLITE and had determined that a license would be necessary to avoid copyright infringement. Offers and counteroffers were exchanged, and on September 9, 1974 a licensing agreement was reached between the parties.[1]

On February 20, 1975 plaintiff, a competitor of West, requested various Air Force records relating to the FLITE program, including information concerning the West negotiations. Certain of the records were made available,[2] but exceptions were claimed for several legal opinions and memoranda surrounding

---

[1]. The terms of the agreement provide for: 1.) the grant by West to the Air Force of an irrevocable, royalty free license to convert information in West's publications (Federal Reporter, Federal Reporter Second Series, Federal Supplement, and Federal Rules Decision) onto a machine readable data base repository and to make hard copy printouts and inhouse cathode ray tube displays; 2.) no dissemination of the data base repository outside the FLITE system; and 3.) the furnishing without cost to West of a tape copy of any machine readable data converted under the agreement.

[2]. Plaintiff was billed $891.09 for the records, indicating a sizable number of documents produced. Cf. 32 C.F.R. § 806.21.

A recent article has summarized the history and competitive relationship of the West and the Mead Data Central computer research systems. See Singular, The Revolution is Almost Here, Juris Doctor, February 1975, at 52.

the West agreement. The grounds asserted were "attorney work products or intra-agency memoranda." Plaintiff appealed this decision within departmental channels, 32 C.F.R. § 806.57, and on June 4, 1975 the Air Force substantially affirmed the prior determination, claiming "attorney-client privilege" as to three documents and "intra-agency communications" as to four documents. The Air Force further stated that, "Disclosure of these documents would inhibit the expression of candid opinions among Air Force personnel and adversely affect the decisional process within the Air Force." (Letter from Office of the Secretary of the Air Force to Robert N. Sayler, p. 2.)

The present action followed pursuant to 5 U.S.C. § 552(a)(4)(B). Here, plaintiff alleges: 1.) that defendants have failed adequately to describe either the documents withheld or the grounds for withholding; 2.) that the withheld documents do not constitute protected intra-agency memoranda; and 3.) that

no compelling demonstration of the potential harm of disclosure has been made by defendants. After oral argument and inspection of the documents *in camera*, the Court concludes that Exemption 5 does cover the documents at issue.

■ Defendants' grudging revelation *at the administrative level* of the subject matter of the seven documents withheld [3] hardly comports with the procedures outlined in *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), and *Cuneo v. Schlesinger*, 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973). In the present judicial proceeding, however, defendants have elaborated on each of the documents. Affidavits of the Chief, Air Force Freedom of Information Branch, and of the Chief, Air Force General Litigation Division, accompanied defendants' Motion for Summary Judgment and Supplemental Memorandum in Support. (Affidavits of Col. James W. Johnson and of Col. Michael J. Barrett, Jr.[4]) These affidavits describe the subject matter of the withheld docu-

---

3. *E.g.*, "Legal opinion, subject: Release of LITE Materials"; "Memo, undated, subject: West Negotiations"; "Memo for File, subject: telephone conversation . . . concerning West Publishing Company." Letter from Chief, General Litigation Division, to Mead Data Central, April 21, 1975.

4. The Barrett Affidavit, filed September 16, 1975, describes the withheld materials as follows:
"1. The legal opinion dated 5 September 1974 is an opinion as to whether or not copyrighted material which is converted into machine readable form by the Air Force would be subject to disclosure under the Freedom of Information Act and additionally reflects an oral opinion on this matter rendered by a Department of Justice attorney to the Air Force. It does not contain any factual material.
2. The request for the foregoing opinion by the Patents Division reflected the course of the negotiations and sought legal advice in order to facilitate the on-going negotiations with West Publishing Company. Although it reflects the current status of the negotiations, it does not represent a final agency position in the negotiations.
3. The undated memorandum regarding the West Publishing Company 'negotiations'

sets forth for Air Force policy makers the offers and counter-offers in the West Publishing Company negotiations. It contains predecisional information about on-going negotiations with the West Publishing Company's negotiations.
4. The 14 June 1975 (sic) legal opinion of the Patents Division, Office of The Judge Advocate General sets forth the rationale for the Office of the Secretary of Defense, General Counsel, for negotiating a licensing agreement with the West Publishing Company. It contains legal conclusions regarding the licensing agreement and recommendations as to what course the negotiations should take.
5. The memorandum of 24 June 1974 from the Office of the Assistant General Counsel, Department of Defense, contains opinions on the legal conclusions in the 14 June 1974 legal opinion rendered by the Patents Division. It sets forth views on justifying to a Congressional Committee the obtaining of a license for storing and retrieval of copyrighted legal information. It does not contain any information other than legal opinions and conclusions.
6. and 7. The two handwritten memoranda reflect discussions among Air Force personnel regarding the West Publishing Company's negotions (sic) and current offers. The

ments in sufficient detail to identify the nature of each document without revealing the content of the communication. While the Air Force's identification might have been more detailed at an earlier stage, the foregoing descriptions are adequate for this *de novo* Court action. 5 U.S.C. § 552(a)(4)(B).

■ On the merits, the Court is guided by the most recent pronouncement of the Supreme Court on Exemption 5, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). In *Sears* the Court noted that Exemption 5 embodies the attorney-client and attorney work-product privileges, as well as the " 'generally . . . recognized' privilege for 'confidential intra-agency advisory opinions' . . . disclosure of which would be 'injurious to the consultative functions of government . . . .' " 421 U.S. at 149, 95 S.Ct. at (quoting *Kaiser Alum. & Chem. Corp. v. United States*, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958), and *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)).

Three documents in the present action are claimed to be exempt from disclosure under the attorney-client privilege. The first is a lengthy legal opinion prepared by the Air Force Patents Division relative to the legal necessity of a licensing agreement with West, the course and terms of the negotiations, and various recommendations concerning the licensing agreement. The second document, written by the Assistant General Counsel (Fiscal Matters), Department of Defense, briefly comments on the previous legal opinion. The third document, prepared by attorneys in the Litigation Division deals with whether or not copyrighted material converted into machine readable form in the computer research system would be subject to disclosure under the Freedom of Information Act. It cites several legal precedents for the view adopted by the memorandum. *See* items 4, 5, and 1, note 4 *supra*.

■ It is the opinion of the Court that each of these documents falls within the attorney-client privilege and is therefore non-disclosable.[5] The memoranda were (1) prepared by attorneys, (2) on behalf of a client who has invoked the privilege, (3) for the purpose of presenting an opinion of law. *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass. 1950)(Wyzanski, J.). They are clearly not the type of material routinely discoverable by a private party in litigation with the agency. 5 U.S.C. § 552(b)(5); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966).

The remaining four documents at issue are allegedly protected under the exception for intra-agency memoranda. Two of these documents are handwritten summaries of an April 21, 1974 meeting and of a series of telephone conversations on April 22, 1974 concerning the Air Force-West negotiations. These memos detail discussions about the terms and conditions of the license agreement, relating the give-and-take in each party's negotiating position. The third document (undated) briefly sketches the status of the negotiations in language of "Our Offer," "Their Counteroffer," and "Our Counteroffer." The fourth item requests pursuant to ongoing negotiations a legal opinion from the Litigation Division as to whether or not the computerized West material would be obtainable under the Freedom of Information Act. *See* items 6, 7, 3, and 2, note 4 *supra*. This request was answered by a subsequent le-

discussions regard predecisional views as to what positions the Air Force should consider in the negotiations."

5. 32 C.F.R. § 806.23(e)(1)(vi) is not, as plaintiff contends, a definitive codification by the Air Force of the attorney-client privilege. In exempting from disclosure "records which are exchanged among agency personnel or . . . agencies preparing for anticipated legal proceedings . . . ," the Air Force regulation expressly states that this is but one example of non-disclosable internal communications. *See* 32 C.F.R. § 806.23(e)(1).

**464**

gal memorandum. *See* item 1, note 4 *supra.*

■■ These four memoranda appear to fit squarely within the meaning of Exemption 5 as enunciated by the Supreme Court in *Sears, supra.* 421 U.S. at 150–51, 95 S.Ct. 1504. Each document reflects ongoing developments in a Government negotiating process. Legal and policy matters are carefully evaluated in the various documents. Advice, obstacles, alternatives, and recommendations are weighed and balanced as the agency progresses toward a final decision. Clearly these intermediate documents constitute privileged deliberations intended to be viewed only by other departmental participants in the decision-making process. While disclosure is the general rule under the Freedom of Information Act, it also remains essential to exempt material that meets the narrow criteria of the Act's exceptions. The Government cannot claim indiscriminate secrecy, but in the rare instances where a document is a *bona fide* intra-agency memorandum dealing strictly with pre-decisional deliberations, it should be shielded from public scrutiny. S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). Furthermore, the Court's examination of both these internal documents and the legal memoranda reveals that no factual or other non-exempt material can be segregated and revealed to plaintiff without invading the secrecy of the documents. *EPA v. Mink, supra* 410 U.S. at 87–92, 93 S.Ct. 827.

■■ Plaintiff's final contention is that even if all the withheld documents fall within Exemption 5, defendants have failed to demonstrate as required why disclosure would be harmful to the Government. *See* 32 C.F.R. § 806.23. The departmental decision, as noted, found that disclosure would "inhibit the expression of candid opinions among Air Force personnel" and be detrimental to the Department's decision-making process. The Barrett affidavit reiterates this statement, pointing to the possible impairment of a "free and frank ex-change of ideas among Air Force personnel." While this language of potential detriment is not to be given a talismanic effect, the Court finds in accord with Air Force representations that the intra-departmental communications are of a sensitive, confidential nature and that their disclosure would in fact be harmful to future deliberations and contract negotiations. *Kaiser Alum. & Chem. Corp. v. United States, supra*, 157 F.Supp. at 946. Absent any public bidding or procurement requirements, revelation of the material is unwarranted.

Accordingly, upon consideration of the Cross-Motions for Summary Judgment, the respective points and authorities, oral argument of counsel having been heard, and for the reasons set forth in this Memorandum, it is by the Court this 14th day of October 1975

Ordered that plaintiff's Motion for Summary Judgment be, and the same hereby is, denied; and it is further

Ordered that defendants' Motion for Summary Judgment be, and the same hereby is, granted.