**Stephen M. AUG, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

Civ. A. No. 74–1054.

United States District Court,
District of Columbia.

March 30, 1976.

Larry P. Ellsworth, Washington, D. C., for plaintiff.

William O. Bittman, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. In this action, plaintiff, a reporter for the Washington Star, seeks access to portions of the minutes of the Board of Directors meetings of defendant National Railroad Passenger Corporation (Amtrak).

Defendant National Railroad Passenger Corporation (Amtrak) was created pursuant to 45 U.S.C. § 541 as a "for profit corporation" and subject to the District of Columbia Business Corporation Act. Amtrak provides a national rail passenger service through contracts with private railroads. 45 U.S.C. § 561(a). The Rail Act prohibits other railroads from competing with Amtrak (without Amtrak's consent) in "intercity rail passenger service over any route over which the Corporation is performing scheduled intercity rail passenger service pursuant to a contract under [the Rail Act]". 45 U.S.C. § 561(c). Amtrak has received massive injections of federal funds as well as federal loan guarantees.

Plaintiff Aug on March 1, 1973, pursuant to the Freedom of Information Act (FOIA), sought access to the minutes of Amtrak's Board meetings as well as other corporate documents which "would tend to show actions the board has taken, how the individual directors voted and what the nature of the discussions was at each of the board meetings." On March 14, 1973, then Amtrak President Roger Lewis denied access to the requested minutes and other documents on the basis of exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). By letter of March 20, 1973, plaintiff requested Amtrak to reconsider its determination. By letter of March 27, 1973, Mr. Lewis denied plaintiff's request for reconsideration. On March 26, 1974, plaintiff again wrote to Amtrak to

determine whether there had been a change in Amtrak's position. Mr. Lewis indicated by letter dated April 1, 1974, that Amtrak maintained its position that the requested materials were not disclosable based on exemption five of the FOIA.

Plaintiff filed his complaint in this action on July 15, 1974, seeking access under 5 U.S.C. § 552(a)(2)(B) to those portions of Amtrak's Board of Directors meetings and other corporate documents revealing:

(a) the actions that the Board has taken in setting Amtrak policy and interpretations of policy, (b) how individual directors have voted and (c) what the basis of the Board's decisions were. [Complaint, p. 2]

Following extensive discovery and after reviewing the index of the withheld materials submitted by the defendant, the accompanying *in camera* memorandum, and a random sampling of the minutes of the Board for the years 1971, 1972, 1973, and 1974, this Court ordered on July 18, 1975, that both the index and the *in camera* memorandum should be disclosed to the plaintiff. Disclosure of the index and the *in camera* memorandum, in conjunction with the model agenda provided by Amtrak and the answers to interrogatories was deemed sufficient to satisfy the requirements of *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and *Cuneo v. Schlesinger,* 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The Court, by the same Memorandum and Order, denied plaintiff's request for involvement in *in camera* inspection and granted plaintiff's motion to compel filed May 12, 1975, thus requiring answers to two interrogatories which asked whether the information sought had been previously disclosed to members of the public or to adverse parties in other litigation. The Court denied a motion to compel filed by plaintiff on June 16, 1975, which requested answers to interrogatories regarding the probable injuries to defendant resulting from the disclosure of minutes.

The Court further recognized in the Memorandum and Order that while the defendant had claimed six of the nine exemptions from disclosure enumerated in 5 U.S.C. § 552(b), the thrust of defendant's opposition rested upon its claim of exemption under 5 U.S.C. § 552(b)(5). The Court indicated that an analysis of the exemption 5 claim would be twofold. First, non-discoverable predecisional communications and discussions must be culled from discoverable agency decisions. See, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Renegotiation Board v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Ash Grove Cement Co. v. FTC,* 167 U.S.App.D.C. 249, 511 F.2d 815 (1975), *rehearing denied,* 171 U.S.App.D.C. 285, 519 F.2d 934 (1975). Second, purely factual material that is not inextricably intertwined with policy-making processes must be separated from policy recommendations. See, *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Washington Research Project, Inc. v. Department of Health, Ed. & Welfare,* 164 U.S.App.D.C. 169, 504 F.2d 238 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

The Freedom of Information Act, 5 U.S.C. § 552, as amended by Pub.L. No. 93–502, 88 Stat. 1561, provides in pertinent part:

§ 552(a)(2) Each agency . . . shall make available for public inspection and copying—

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

(C) . . . instructions to staff that affect a member of the public;

§ 552(a)(5) Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

\*     \*     \*     \*     \*     \*

§ 552(b) This section does not apply to matters that are—

\*     \*     \*     \*     \*     \*

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

§ 552(e) For purposes of this section, the term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

The Rail Passenger Service Act, 45 U.S.C. § 501 *et seq.*, provides in pertinent part:

§ 546(g) The Corporation shall be subject to the provisions of section 552 of Title 5.

■ The Rail Passenger Service Act expressly makes Amtrak subject to the provisions of the FOIA, 45 U.S.C. § 546(g), *supra*. Thus, defendant's argument that Amtrak's structure as a for-profit corporation requires unique consideration under the FOIA is not dispositive. It appears that Congress, through 5 U.S.C. § 552(a)(2)(B), fully intended to expose Amtrak's policy decisions and interpretations to public inspection. The requirements of 45 U.S.C. § 548(a) that Amtrak compile certain statistical and financial information and that Amtrak make such information available to the public does not lessen the obligations of disclosure mandated by the FOIA.

■ Amtrak insists that the policy decisions and interpretations sought in this case are exempt from disclosure under exemption five of the FOIA, which provides for nondisclosure of " . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The very essence of exemption five is the protection of the deliberative processes leading to a final agency determination, whether such determination be a formal adjudication or the formulation of agency policy. While recommendations, discussions, deliberations and policy alternatives leading to decisions are generally deemed to be "predecisional" and protected from disclosure by exemption five, policy decisions of the agency once adopted are not so protected and must be disclosed. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Once a recommendation has been adopted by the Board of Directors, it becomes Amtrak "policy", loses its exempt status and renders exemption five inapplicable, *NLRB v. Sears, Roebuck & Co., supra*, at p. 153, 95 S.Ct. 1504.

■ Policy statements and interpretations under (a)(2)(B) are not limited strictly to matters involving adjudicative or legislative functions of the agency. It is beyond dispute that the Amtrak Board of Directors, like the Board of any corporation, makes "policy decisions" which are utilized as a touchstone for future actions by Amtrak. As such, these final policy determina-

tions must be made available to the public. See, *Ash Grove Cement Company v. FTC,* 167 U.S.App.D.C. 249, 511 F.2d 815 (1975), *rehearing denied,* 171 U.S.App.D.C. 285, 519 F.2d 934 (1975).

▮ The FOIA requires disclosure of all records not specifically exempted. 5 U.S.C. § 552(a)(3). Disclosure is mandatory unless Amtrak can show that the portions of the minutes sought are protected by a specific exemption. *Vaughn v. Rosen,* 157 U.S.App. D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Amtrak has failed to indicate persuasively how the disclosure of these final policy determinations could undermine the consultative functions or decision making processes of the corporation and its Board of Directors.

▮ While relying primarily on exemption five for its claim of privilege, Amtrak has also invoked exemptions two, three, four, six and seven. None of these claims of exemption are properly invoked in this instance. Amtrak has argued that exemption two, which provides for nondisclosure of matters "related solely to the internal personnel rules and practices of an agency", operates to exempt the corporation's labor contract reports, hiring and salary ratifications, and all resolutions involving internal personnel practices of Amtrak. Under exemption two, the burden is on the corporation to establish that the materials in issue are related "solely" to internal personnel rules and practices; Amtrak has failed to maintain such burden and cannot avail itself of exemption two by proffering an overly broad view of the exemption. Clearly exemption three is not available to Amtrak as none of the policy decisions sought in this matter are "specifically exempted from disclosure by statute". 5 U.S.C. § 552(b)(3). The corporation's reliance upon section 12

of the Rail Act, 45 U.S.C. § 601(b)(2) in support of the claimed exemption is unfounded.[1]

▮ The policy statements sought are not confidential commercial or financial information within the meaning of exemption four, 5 U.S.C. § 552(b)(4), and as such are not exempt from disclosure. Amtrak has failed to demonstrate that any submitter of commercial or financial information operated upon a reasonable expectation of confidential treatment, or that the disclosure of such information would impair the Government's ability to obtain information in the future or cause harm to the competitive position of the person from whom the information was obtained. See, *National Parks and Conservation Assoc. v. Morton,* 162 U.S. App.D.C. 223, 498 F.2d 765 (1974).

▮ Amtrak has argued that the disclosure of its policy decisions with regard to hiring and salaries would constitute "a clearly unwarranted invasion of personal privacy" under exemption six. A balancing test weighing the possibility of an invasion of privacy against the public interest in disclosure is appropriate in judging claims under exemption six. *Ditlow v. Shultz,* 170 U.S.App.D.C. 352, 517 F.2d 166 (1975); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670, *stay denied,* 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971). In this instance, the public's interest in disclosure and accountability of persons being paid in large part from public funds outweighs any possible privacy invasion which this disclosure might occasion.

▮ Defendant Amtrak's reliance upon exemption seven to prevent disclosure of certain of the Board's policy decisions is unwarranted. Nothing in the requested records pertains to the enforcement of either civil or criminal statutes to which Amtrak has enforcement authority. Thus,

---

1. 45 U.S.C. § 601(b)(2) reads:

Whenever the Corporation submits any legislative recommendation, proposed testimony, or comments on legislation to the President, the Department of Transportation, or the Office of Management and Budget, it shall concurrently transmit a copy thereof to the Congress. No officer or agency of the United States shall have any authority to require the Corporation to submit its legislative recommendations, proposed testimony, or comments on legislation to any officer or agency of the United States for approval, comments, or review, prior to the submission of such recommendations, testimony, or comments to the Congress.

the policy statements are neither "investigatory records" nor "compiled for law enforcement purposes" as required in order to invoke exemption seven.

■ Amtrak must make available to the plaintiff purely factual material that is not inextricably intertwined with the deliberative processes of the Board. This would include but would not be limited to the following: date and time of meeting, location, those present, presiding officers, etc.

In accordance with this opinion, Amtrak should make available to plaintiff within twenty days all policy decisions of its Board of Directors as evidenced by resolutions and other final actions voted upon and approved by the Board, and contained in Board minutes. The subject matter of most policy decisions as indicated in Board resolutions should be readily discernible from the text of the resolutions themselves. Where the content of the policy decision is not evident from the resolution itself, Amtrak should provide a short and plain statement which indicates the nature of the matters determined by actions of the Board; however, such statement need not be such as might interfere with or disclose predecisional deliberations leading to a final policy decision. Amtrak should also provide the final Board vote on all such resolutions, including the names of Directors voting against an adopted resolution.