In the Matter of MIRACLE MILE ASSOCIATES, Appellant, v TANYA YUDELSON, as Records Access Officer of the City of Rochester, et al., Respondents.

Fourth Department, May 22, 1979

APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (William L. Dorr* of counsel), for appellant.

*Louis N. Kash, Corporation Counsel (Jeffrey Eichner* of counsel), for respondents.

## OPINION OF THE COURT

CARDAMONE, J.

This appeal presents the question of what kinds of documents maintained as records by a municipality are exempt from public inspection under the Freedom of Information Law (Public Officers Law, art 6). This litigation rises in a setting focused on today's competitive clash between a regional developer and downtown interests.

Miracle Mile Associates, appellant, plans to develop a proposed suburban regional shopping center in Monroe County. It contends that respondent, the City of Rochester, petitioned the New York State Department of Environmental Conservation (DEC) for environmental review of the proposed Town of Henrietta shopping center for the purpose of delaying interminably construction of "The Market Place". In addition to asking for environmental review, the city also petitioned the DEC for a declaratory ruling under the Freshwater Wetlands Act (ECL art 24), sought to persuade Federal officials of a possible adverse environmental impact and commissioned its own study of the effects of the proposed Market Place Mall. Characterizing these activities as a deliberate effort "to wreck" the project, appellant instituted this article 78 proceeding to obtain certain documents from the city and also instituted a presently pending civil suit for damages against the city in the Federal District Court for the Western District of New York. The City of Rochester responds that it acted out of concern for possible adverse environmental effects.

On June 27, 1978 appellant made four separate requests for access to city documents pursuant to the Freedom of Information Law addressed to: (1) the Assistant City Manager for Development; (2) the Office of the City Manager; (3) the Department of Community Development; and (4) the Law Department Corporation Counsel. In each case access was sought to: "All memos, minutes, correspondence, or records of any kind, from Jan. 1, 1968—present, pertaining to the proposed development known as Market Place Mall (Miracle Mile

Mall) to be located in the Town of Henrietta between Jefferson Road and West Henrietta Road, or to the relocation of Red Creek proposed for that property". After an exchange of correspondence with the Records Access Officer of the respondent city, certain documents were agreed to be released. Respondent's Records Officer on July 14 denied appellant's request for access to any other information on the following grounds: "The remaining information in the City's files is not releaseable because it is (1) exempted under the provisions of the state and/or city Freedom of Information acts, or (2) exempted and/or privileged under Articles 31 and 45 of the Civil Practice Law and Rules, or (3) of a nature such that its disclosure would adversely affect the public interest, or (4) not collected in the ordinary course of business and not part of a general study".

Appellant appealed the determination of the Records Officer to the office of respondent Kash, City Corporation Counsel. By letter dated August 2, 1978 respondent Kash stated that the city would release, in addition to the declaratory rulings it had already released, the city's application to the New York State Environmental Conservation Commissioner for an environmental impact statement and the commissioner's response to it. However, respondent Kash declined to release other correspondence between the City of Rochester and other agencies stating that such records are exempt from disclosure by virtue of section 87 (subd 2, par [g]) of the Public Officers Law. Respondents also declined to release communications made between different employees of the city which do not constitute statistical or factual tabulations or data, instructions to staff or final agency policy or determinations. The materials in the Miracle Mile file were categorized in an affidavit by the city as follows: (1) petitions for declaratory rulings by the Department of Environmental Conservation and the responses to these petitions; (2) correspondence among (a) city officials and officials of other agencies; (b) officials of the city and persons not affiliated with other agencies; (c) different city officials or employees; (3) handwritten notes of city officials or employees for their own files; (4) miscellaneous newspaper clippings, outside publications, and other media articles relating to Miracle Mile; (5) various Federal, State and local laws, rules and regulations.

Special Term conducted an *in camera* review of the documents requested by appellant which respondent had declined

to release and, subsequently, ordered that some, but not all, of the documents reviewed be released. Respondent also furnished appellant with a list of those documents withheld and of those released. We have been furnished with the *in camera* review materials which Special Term ordered withheld.

We comment briefly at the outset on appellant's claim that respondent's conduct equitably estops it from claiming any exemption under the Freedom of Information Law. Concededly, a municipal corporation may be estopped from asserting a right it has; but this bar is to be used sparingly and only in truly unusual cases (*La Porto v Village of Philmont,* 39 NY2d 7; *Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662; *Gordon v Holt,* 65 AD2d 344; *Matter of Moritz v Board of Educ.,* 60 AD2d 161). Appellant here failed to demonstrate reliance and a prejudicial change in position, without which no basis exists for the application of this equitable remedy.

Miracle Mile Associates urges on the merits that the order directing *in camera* review be reversed because respondent's conclusory and nonspecific assertions fail to meet its burden of proving entitlement to the statutory exemption claimed. It also urges that we reverse the supplemental order at Special Term which permitted some materials to be withheld on the grounds that the documents do not fall within the statutory exemption for "inter-agency or intra-agency material".

The Public Officers Law states that "[i]n the event that access to any record is denied pursuant to the provisions of subdivision two of section eighty-seven of this article, the agency involved shall have the burden of proving that such record falls within the provisions of such subdivision two" (§ 89, subd 4, par [b]). New York's Freedom of Information Law is patterned after the Federal Freedom of Information Act (*Matter of McAulay v Board of Educ.,* 61 AD2d 1048). Under the Federal act the burden is on the agency resisting disclosure (US Code, tit 5, § 552, subd [a], par [4], cl [B]). An agency resisting disclosure must furnish detailed affidavits or oral testimony to establish to the satisfaction of the trial court that the documents sought are exempt. Such exemption may also be demonstrated by showing exceptional circumstances or by selecting a representative document for *in camera* inspection or by disclosing certain portions and showing by circumstances that the excised portions are protected (*Environmental Protection Agency v Mink,* 410 US 73, 93).

In view of the fact that extensive *in camera* inspection is

burdensome and appellate review difficult when the trial court's findings are phrased in conclusory language, one Federal court directed that the agency give a relatively detailed analysis of the documents involved, indexed and cross-referenced as to justification so as to permit adequate adversary testing and to insure that the burden of proof remains on the agency *(Vaughn v Rosen,* 484 F2d 820, cert den 415 US 977). Stating that it is a "rare case" that an *in camera* determination will be necessary, the Court of Appeals held that "[a] description of the material sought, the purpose for which it was gathered and other similar considerations will usually provide a sufficient basis upon which the court may determine whether the assertion of governmental privilege is warranted" *(Cirale v 80 Pine St. Corp.,* 35 NY2d 113, 119). Plainly, in some cases, *in camera* inspection will be necessary, but it is not and should not be an "automatic" or "inevitable tool" in every case *(Environmental Protection Agency v Mink, supra,* p 93).

■ The thrust of the case law is clear. Since, as noted, extensive *in camera* review is burdensome, both the New York and Federal courts afford a full opportunity to the agency involved to avoid a court inspection by otherwise meeting its burden of proving an exemption. The agency must furnish a sufficiently detailed analysis of the questioned documents so that Special Term has an adequate basis for the exercise of its discretion and to insure that *in camera* inspection will be directed only in the "rare case". However, since the parties obviously have unequal knowledge of the documents sought, where the agency fails to give sufficiently detailed information with respect to the material allegedly exempt to permit the trial court to decide the issue, *in camera* inspection is one vehicle for protecting the rights of both. The respondent's letter of July 14 and its affidavit contain merely general statements worded in conclusory fashion insufficient for Special Term to determine whether the material was exempt and, therefore, properly prompted its *in camera* inspection in this case *(Vaughn v Rosen, supra,* p 825; *Cirale v 80 Pine St. Corp., supra,* p 119; *Matter of Zuckerman v New York State Bd. of Parole,* 53 AD2d 405, 408).

As a consequence of its inspection, Special Term ordered that some documents be disclosed to appellant. From this supplemental order Miracle Mile Associates also appeals as to those documents still withheld as exempt.

The legislative purpose behind the enactment of New York's Freedom of Information Law is the "people's right to know" (Public Officers Law, § 84; Memorandum of Assemblyman and Governor's Memorandum of Approval to Predecessor Statute [L 1974, ch 578], NY Legis Ann, 1974, pp 130-131, 392). With the amendment of the Freedom of Information Law in 1977 (L 1977, ch 933), the Legislature broadened the reach of the statute by making *all* records presumptively subject to disclosure, rather than certain enumerated categories *(Matter of Sheehan v City of Binghamton,* 59 AD2d 808; NY Legis Ann, 1977, pp 330-331). Public disclosure laws are liberally construed to allow maximum access to documents. Statutory exemptions are narrowly construed *(Matter of Dunlea v Goldmark,* 54 AD2d 446, 449, affd 43 NY2d 754). In like manner the Federal Freedom of Information Act (US Code, tit 5, § 552) mandates full agency disclosure unless the information sought is exempted under clearly delineated and narrowly construed statutory language *National Labor Relations Bd. v Sears, Roebuck & Co.,* 421 US 132, 136; *Mobil Oil Corp. v Federal Trade Comm.,* 406 F Supp 305, 309, 430 F Supp 849; *Aug v National R. R. Passenger Corp.,* 425 F Supp 946, 951; *Mead Data Cent. v United States Dept. of Air Force,* 402 F Supp 460, 464, mod 566 F2d 242).

The exemption for inter-agency or intra-agency materials found in section 87 (subd 2, par [g]) of Public Officers Law and upon which respondents rely has been discussed in the advisory opinions of the Committee on Public Access to Records, which was created by subdivisions 1 and 2 of section 89 of the statute. Since the committee is the State agency charged with administering the Freedom of Information Law, its interpretation of the statute, if not irrational or unreasonable, should be upheld *(Matter of Sheehan v City of Binghamton,* 59 AD2d 808, 809, *supra).* This exemption permits access to records or portions thereof which contain any statistical or factual information, policy or determinations upon which the agency relies. On the other hand, written memoranda or letters sent from an official of one agency to an official of another or to an official within the same agency are not available if the communication is purely advisory in nature. For example, written advice provided by staff to the head of an agency that is solely reflective of the opinion of staff (not factual information upon which the agency relies in carrying out its duties) is exempt from public disclosure. Such is needed to foster open and

candid discussion between subordinantes and a chief administrator concerning appropriate administrative action (Advisory Opns of Committee on Public Access to Records, Aug. 11, 1978, FOIL-AO-888, p 2; Aug. 16, 1978, FOIL-AO-892, p 2; Feb. 16, 1978, FOIL-AO-704, pp 4-5).

As to what constitutes a final agency determination under section 87 (subd 2, par [g]), the committee has concluded that using the ordinary dictionary definition of the word "final" would produce an unreasoanble result by denying access to all opinions, orders and determinations except those made by the highest agency. Adopting the legal definition, as the committee does, permits the access intended under subdivision 5 of section 89 at each stage of an often multilevel administrative process (Advisory Opn of Committee on Public Access to Records, Feb. 16, 1978, FOIL-AO-704, pp 5-6).

Interpreting the Federal Freedom of Information Act, the Supreme Court distinguishes between predecisional memoranda prepared to assist the agency decision-maker in arriving at his decision, which are exempt, and postdecisional memoranda, setting forth reasons for agency decisions already made, which are not (Renegotiation Bd. v Grumman Aircraft Eng. Corp., 421 US 168, 184; National Labor Relations Bd. v Sears, Roebuck & Co., 421 US 132, 151-152, supra). The reasons which underlie an agency policy actually adopted, if expressed within the agency, the Supreme Court stated, constitute the "working law" of the agency and are outside the protection of the Federal inter-agency/intra-agency exemption. There is no exemption for final opinions which embody an agency's effective law and policy, but protection by exemption is afforded for all papers which reflect the agency's group thinking in the process of working out that policy and determining what its law ought to be. Thus, an agency may refuse to produce material integral to the agency's deliberative process and which contains opinions, advice, evaluations, deliberations, policy formulations, proposals, conclusions, recommendations or other subjective matter (National Labor Relations Bd. v Sears, Roebuck & Co., supra, pp 150-153; Wu v National Endowment for Humanities, 460 F2d 1030, 1032-1033, cert den 410 US 926). The exemption is intended to protect the deliberative process of government, but not purely factual deliberative material (Mead Data Cent. v United States Dept. of Air Force, 566 F2d 242, 256, supra). While the purpose of the

exemption is to encourage the free exchange of ideas among government policy-makers, it does not authorize an agency to throw a protective blanket over all information by casting it in the form of an internal memo *(Wu v National Endowment for Humanities, supra,* p 1033). The question in each case is whether production of the contested document would be injurious to the consultative functions of government that the privilege of nondisclosure protects *(Environmental Protection Agency v Mink,* 410 US 73, 87, *supra).*

■ Viewing this material in light of those decisions, we conclude that certain of the documents held by Special Term to be exempt from disclosure are not entitled to such protection and should be made available. Each document we reviewed is identified and numbered in chronological order for convenience in an appendix at the end of this opinion. Those to be made accessible are indicated by an asterisk. Items Nos. 4, 18, 19, 20, 43, 47 and 51 are accessible because none contain advice or opinion which is a part of the deliberative process. Item No. 5 refers to the proposed hearing under New York State's Environment Quality Review Act and contains instructions to staff involving the public and is, therefore, not exempt. Items Nos. 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 21, 48 and 50 all state an agency's final determination or reflect prior final policy determination by an agency and, therefore, contain postdecisional material which is not exempt. Since the enumerated 22 documents are not exempt under New York State's Freedom of Information Law, they should be released.

The order granting an *in camera* inspection should be affirmed and the supplemental order should be modified in accordance with this opinion and, as modified, it should be affirmed.

DILLON, P. J., DOERR and MOULE, JJ., concur.

Order entered August 21, 1978 unanimously affirmed and ordered entered August 23, 1978 unanimously modified and, as modified, affirmed, without costs, in accordance with opinion by CARDAMONE, J.