**9to5 ORGANIZATION FOR WOMEN OFFICE WORKERS, Plaintiff,**

**v.**

**The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Defendant.**

Civ. A. No. 80–2905–C.

United States District Court, D. Massachusetts.

Dec. 21, 1981.

John Reinstein, c/o Massachusetts Civil Liberties Union Foundation, Boston, Mass., for plaintiff.

Anna R. Tretter, Asst. U. S. Atty., Boston, Mass., Stephen L. Siciliano, Senior Counsel, Board of Governors of Federal Reserve System, Washington, D. C., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

Plaintiff 9to5 Organization for Women Office Workers (9to5) filed a complaint under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the Board of Governors of the Federal Reserve System (the Board) to provide the plaintiff with copies of certain records in the possession of the Board concerning activities of the Boston Survey Group (BSG) and the Federal Reserve Bank of Boston (the Bank). The defendant has identified over 350 documents in its possession which, it believes, are responsive to the plaintiff's request. The Board, however, claims that each of the documents fits within at least one and as many as four of the nine exemptions of 5 U.S.C. § 552(b); the Board also claims that disclosure of many of the documents would violate the so-called Trade Secrets Act, 18 U.S.C. § 1905, which makes criminal the disclosure to the public by the government of certain information obtained from private sources if disclosure is not authorized by law. The parties have filed cross-motions for summary judgment on these issues. After hearing oral arguments, I find and rule as follows:

*Exemption 4 of the FOIA*

The Board claims that many of the documents requested by 9to5 are exempt from disclosure under 5 U.S.C. § 552(b)(4), which exempts "commercial or financial information obtained from a person and . . . confidential." According to the Board, the documents which fit into this exemption contain material, not reasonably segregable from the non-exempt material, which the Bank has obtained during its 25-year membership in the Boston Survey Group, an organization which, according to the defendant, conducts salary surveys of its 40-odd members (all of whom have at least 500 employees), and distributes the results of the surveys to each member. According to affidavits of employees of the Bank and other members of the BSG, all members have pledged to treat information received through BSG membership as confidential, and not to divulge it to anyone.

This information has been inserted in various letters and memoranda that have passed over the past 25 years between the Bank and the Board as a result of the Bank's efforts to fulfill the Board's requirement that each federal reserve bank around the country supply the Board with information relevant to the setting of the salaries of each reserve bank's employees. While each reserve bank selects its own employees, the level of compensation of every reserve bank employee is subject to the approval of the Board. 12 U.S.C. §§ 307, 341. The Board thus claims (1) that this information is "commercial or financial" in nature—a claim not contested by the plaintiff; (2) that the information was obtained from a "person," the BSG; and (3) that the information is confidential.

■ 5 U.S.C. § 551(2) defines "person" as including "an individual, partnership, corporation, association, or public or private organization other than an agency [defined in § 551(1)]." According to the Supreme Court, the requirement of § 552(b)(4) that information be "obtained from a person" requires only that the information be obtained from outside the government. *Federal Open Market Committee v. Merrill,*

443 U.S. 340, 360, 99 S.Ct. 2800, 2812, 61 L.Ed.2d 587 (1979). Plaintiff here claims that the Board obtained the BSG information in question from the reserve bank, which is not a person for purposes of § 552(b)(4). Plaintiff's argument fails to take into account the fact that the information has been obtained by the Bank from the BSG, which clearly is a "person" under § 552(b)(4), in large part for the purposes and benefit of the Board of Governors so that the Board may execute its statutory obligation to approve the compensation schedules of the reserve banks. I therefore rule that for purposes of § 552(b)(4), the BSG information sought by the Board to be excluded from disclosure has been "obtained from a person."

While Congress did not provide a definition for the word "confidential" as it is used in § 552(b)(4), the Court of Appeals for the District of Columbia articulated in *National Parks and Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir.1974), a widely accepted two-pronged test for material claimed to be confidential under exemption 4. According to this test,

> commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain *necessary* information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

498 F.2d at 770 (emphasis added).

■ Defendant relies exclusively on the first part of this test, claiming that disclosure of the BSG information would subject the Federal Reserve Bank of Boston to expulsion from the BSG, and thus would deprive the Board and the Bank of the survey information necessary to keep salaries paid to Bank employees "competitive" with other large employers in the Boston area. As plaintiff points out, the defendant has failed to demonstrate through the affidavits submitted in support of its motion for summary judgment how discontinuance of BSG information would deprive the Board

of "necessary" information. The Board's claim that similar information is supplied to it by three other federal reserve banks through those banks' membership in private survey groups similar to the BSG implies that many federal reserve banks other than those three supply the "necessary" information to the Board without participation in such groups. I therefore rule that at this point, the Board has failed to carry its burden regarding the potential loss of necessary information if disclosure of the documents is ordered, and that a genuine issue of material fact still exists with regard to the confidentiality issue.

### Exemption 5 of the FOIA

█ The defendant Board also claims that all but 45 of the relevant documents are exempt from disclosure under § 552(b)(5), which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." The seminal Supreme Court case on this issue is the *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), in which that Court reiterated Congress' clear intention in articulating this exemption that "materials reflecting the deliberative or policy-making process", *Id.* 410 U.S. at 89, 93 S.Ct. at 837, be exempt from disclosure in order to encourage frank and candid intra-governmental discourse necessary for the development of sound policy. *Id.* 410 U.S. at 87–89, 93 S.Ct. at 836. The Court, however, ruled that "purely factual, investigative matters," *Id.* 410 U.S. at 89, 93 S.Ct. at 837, which are "severable without compromising the private remainder of the documents," *Id.* 410 U.S. at 91, 93 S.Ct. at 838, must be disclosed, for disclosure of these materials poses no threat to the deliberative process. Subsequent case law has established that in order for exemption 5 to apply, the material must be clearly "pre-decisional," *N. L. R. B. v. Sears-Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975), and that deliberative materials such as recommendations which are explicitly adopted by decision-makers and thus become agency

policy lose their exemption 5 status, and become disclosable. *Aug v. National Railroad Passenger Association*, 425 F.Supp. 946, 950 (D.C.1976), *N. L. R. B. v. Sears & Roebuck, supra*, 421 U.S. at 161–62, 95 S.Ct. at 1521.

█ Plaintiff is understandably unwilling to accept the Board's sweeping claim made with respect to almost every document for which exemption 5 is asserted that to the extent that non-exempt material is contained in these documents, it is integrated with exempt material to such a degree that none of it can be retrieved without unreasonable expenditure of effort. I therefore rule that *in camera* inspection of a representative 88 of the 300-odd documents which defendant claims are within exemption 5 is appropriate. *See, e.g., Cooper v. Department of the Navy of the United States*, 558 F.2d 274, 279 (5th Cir. 1977), *modified*, 594 F.2d 484 (5th Cir. 1979); *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 260–62 (D.C.Cir.1977). Defendant should prepare forthwith the following documents, as identified from the defendant's attachment H to its memorandum in support of its motion for summary judgment, for *in camera* inspection: 43, 45, 46, 49, 52, 54, 60, 76, 87, 89, 106, 110, 112, 114, 115, 118, 122, 123, 124, 126, 127–139, 214–231, 304–321, 341–359.

### The Trade Secrets Act

█ Defendant also claims that disclosure of more than 170 of the documents responsive to plaintiff's request would violate the so-called Trade Secrets Act, which prohibits, subject to criminal penalties, the disclosure by government employees, "in any manner or to any extent *not authorized by law*," of records containing information which

concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation or association . . . .

18 U.S.C. § 1905 (emphasis added). As the plain language of the statute states, only disclosures "not authorized by law" are outlawed by the Trade Secrets Act. *See Chrysler v. Brown*, 441 U.S. 281, 295–98, 99 S.Ct. 1705, 1714–1716, 60 L.Ed.2d 208 (1979). Thus the first inquiry with regard to the Trade Secrets Act is whether disclosure is anywhere authorized by law. The Freedom of Information Act, of course, authorizes the general disclosure of all information held by government agencies. 5 U.S.C. § 552(a). Only the disclosure of information which fits into one of the nine exemptions of the § 552(b) may constitute unauthorized disclosure and thus may activate the provisions of the Trade Secrets Act. *Guerra v. Guajardo*, 466 F.Supp. 1046 (S.D. Tex.1978), *aff'd*, 597 F.2d 769 (5th Cir. 1979). Thus invocation of the Trade Secrets Act adds nothing to defendant's claim that certain of the documents responsive to plaintiff's request are protected from disclosure beyond that which may be established under the exemptions of 5 U.S.C. § 552(b). I therefore rule that the defendant has inappropriately relied on the Trade Secrets Act, and that the plaintiff's motion for summary judgment on this issue should be granted.

### Exemptions 2 and 6 of the FOIA

■ Defendant has also moved for summary judgment with respect to its claim that 27 of the documents responsive to plaintiff's request are exempt from disclosure under 5 U.S.C. § 552(b)(2), which exempts internal personnel rules or practices of an agency, and § 552(b)(6), which exempts personnel and medical files, and similar files whose disclosure would constitute a clearly unwarranted invasion of personal privacy. Since plaintiff has not responded to defendant's arguments on these two issues, I assume that plaintiff does not object to the exemption of these documents. I therefore rule that the defendant's motion for summary judgment with regard to its claim that certain of the documents are exempt under 5 U.S.C. § 552(b)(2) and (b)(6) should be granted.

Order accordingly.