**9 to 5 ORGANIZATION FOR WOMEN
OFFICE WORKERS, Plaintiff
v.
THE BOARD OF GOVERNORS OF
THE FEDERAL RESERVE SYSTEM,
Defendant**

**No. 80-2905-C**

United States District Court
Commonwealth of Massachusetts

**June 17, 1982**

**John Reinstein, Esq.,** counsel for plaintiff.
**Ausa Tretter and Stephen L. Siciliano,** counsels for defendant.

## MEMORANDUM

**Caffrey, Ch. J.** Plaintiff 9to5 Organization for Women Office Workers (9to5) filed a complaint under the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, to compel the Board of Governors of the Federal Reserve System (the Board) to provide plaintiff with certain records in the possession of the Board concerning activities of the Boston Survey Group (BSG) and the Federal Reserve Bank of Boston (the Bank). The Board identified over 350 documents in its possession which it believes are responsive to plaintiff's request. At the same time, the Board claimed that each of these documents fits within at least one and as many as four of the nine exemptions of the FOIA. The Board also claimed that disclosure of many of the documents would violate the so-called Trade Secrets Acts, 18 U.S.C. sec. 1905.

The parties brought cross-motions for summary judgment, and in an order and accompanying memorandum filed December 21, 1981, this Court ruled against the Board with regard to its invocation of the Trade Secrets Act, and in its favor with regard to the Board's claim that a small number of the requested documents were exempt from disclosure under 5 U.S.C. sec. 552(b)(2) and (6). This Court further ruled that with regard to the Board's claim that most of the documents were exempt under sec. 552(b)(4), a genuine issue of material fact remained to be decided, i.e. whether these documents are "confidential" as required by sec. 552(b)(4). Thus, with regard to exemption (b)(4), the Board's motion for summary judgment was denied, and this issue remains to be decided.

The Court also considered the Board's argument that all but one of the documents are exempt from disclosure under sec. 552(b)(5), which exempts "inter-agency or intra-agency memoranda or letters which would not be available by law to a party . . . in litigation with the agency." As noted at that time, this exemption has been interpreted to exempt "materials reflecting the deliberative or policy-making process" from the FOIA's general policy of disclosure of all information held by government agencies. The rationale of this exemption is said to be the policy of encouraging the frank and candid intra-governmental discourse necessary for the development of sound policy. **Environmental Protection Agency v. Mink,** 410 U.S. 73, 87-89 (1973). However, "purely factual, investigative matters," which are "severable (from documents otherwise exempt under sec. 552(b)(5) ) without compromising the private remainder of the documents," 410 U.S. at 91, must be disclosed, for disclosure of these materials poses no

threat to the deliberative process. Case law has also established that in order for Exemption 5 to apply, the material must be clearly "pre-decisional," **N.L.R.B. v. Sears-Roebuck & Co.,** 421 U.S. 132, 151 (1975), and that deliberative materials such as recommendations which are "**expressly**" adopted by decision-makers and thus become agency policy lose their Exemption 5 status, and must be disclosed. **Id.** at 161 (emphasis in the original). As the Supreme Court in **N.L.R.B. v. Sears, Roebuck & Co.** stated:

> The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice, **if adopted,** will become public is slight. First, when adopted, the reasoning becomes that of the agency and becomes **its** responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports (the policy of denying exemption 5 status to "adopted" memoranda) . . .

**Id.** at 161. See also **Aug v. National Railroad Passenger Association,** 425 F. Supp. 946, 950 (D.D.C. 1976).

In its memorandum in support of its motion for summary judgment, plaintiff contests the Board's claim that all but one of the 350-odd documents is exempt from disclosure under this fifth exemption of the FOIA. Plaintiff specifically questions the Board's claim that all of these documents were either pre-decisional, advisory memoranda and reports, or "decisional" (**i.e.,** non-exempt) documents which contain exempt material not reasonably segregable from the non-exempt material of those documents. Plaintiff also argues that the Board's own description of the documents, found in the Board's "Vaughn" index (see, **Vaughn v. Rosen,** 523 F. 2d 1136 (D.C.

Cir. 1975) ), which is attached to its motion for summary judgment, supports plaintiff's suspicion that much of this advisory material has been adopted by the Board and thus has lost whatever Exemption 5 status the material might have had.[1]

As noted in this Court's memorandum of December 21, 1981, it was found that 9to5's unwillingness to accept the Board's sweeping Exemption 5 claim was reasonable, and accordingly the Board was ordered to present the Court with 88 documents for **in camera** inspection. These documents were selected by the Court after having examined the Vaughn index. These documents were produced by the Board, and after examining them, I rule that few of these 350-odd documents fit into Exemption 5.

---

1. The Board has also advanced another theory in support of its claim that the documents sought by 9 to 5 are exempt from disclosure under "552 (b) (5). The Board claims that this information is "confidential commercial information" protected from discovery in Fed.R.Civ.P. 26(c)(7), which the Supreme Court in **Federal Open Market Committee of The Federal Reserve System** v. Merrill, 443 U.S. 340 (1979) ruled is within the ambit of Exemption 5. According to the Court, material whose disclosure would put the government agency involved in a "competitive disadvantage" may receive Exemption 5 status as confidential commercial information. A reading of this case reveals that by recognizing that such information may be withheld under Exemption 5, the Court intended to implement the legislative intent of Congress that the government be allowed to withhold "documents or information which it has received or generated **before it completes the process of awarding a contract** or issuing an order, decision or regulation.' " **Id.** at 359 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess., at 10 (1966). Since the material sought here by plaintiff in no manner fits within the above definition of material sought to be protected by Congress, I rule that they are not the type of material which the Supreme Court held in **Merrill** is within Exemption 5.

All of the documents presented for **in camera** inspection relate to the implementation of the Board's employee compensation policy at the Federal Reserve Bank of Boston. Although employees of the Bank are selected by the Bank's Board of Directors (or its designees), the compensation of those employees is subject to approval by the Board of Governors of the Federal Reserve System. 12 U.S.C. secs. 307, 341. The documents examined by the Court show that the material sought here by 9to5 falls into four basic categories. The first category consists of letters, usually from a Bank senior officer, to the Board, requesting that the Board approve a change in salary structure at the Bank. Multi-page reports which spell out and explain the reasons underlying the proposed changes are routinely attached to these letters, although these attachments are often listed in the Index separately from their covering letters. See, e.g., Index Item #115, #111, #118.

The second group consists of memoranda prepared for the Board, usually by the Board's Division of Personnel, in which the Bank's requests for approval of proposed salary changes are examined in detail. See, e.g., Index Item #114.

The third group consists of letters from the Board to the Bank which announce the Board's decisions with respect to the Bank's proposed salary changes. See, e.g., Index Item #112. These letters typically convey approval of requested changes in the salary structure at the Bank, and make specific reference to the Bank letter in which the specific request is made.

A fourth group of materials consists of extensive reports compiled by employees of the Bank for each year from at least 1965 through 1980. These reports apparently were compiled by the Bank as part of its effort to maintain a compensation structure which was competitive with private-sector businesses in the Boston area, and were used by the Bank in formulating changes in the structure which were submitted to the Board for approval. It is not clear how these reports came into the Board's possession. That these reports could have originally been attached to the Bank's letters of the first group is supported by the fact that some of these first-group letters have been presented in the Vaughn Index separately, detached from the material which the language of the letters state is "enclosed." See, e.g. Index #118. If these reports were originally attached to the letters of the first group, then each one should be considered an integral part of the letter to which it was originally attached.

The Board has used a curious and circular form of argument to support its invocation of Exemption 5 for the materials which fall within the first and third groups. The letters and attached materials of the first group are within Exemption 5, according to the Board, because they are the type of "predecisional," "advisory" material that the courts have found is covered by this exemption. The Board does not argue that the letters of the third group (which convey the Board's decisions on the Bank's proposed salary changes which were conveyed to the Board through the letters and attached materials of the first group) are predecisional or advisory. Rather, the Board claims that these letters are exempt under Exemption 5 because they make reference to the letters of the first group sent to the Board by the Bank, and that those references cannot be reasonably deleted from the material. Our **in camera** inspection shows, however, that these letters from the Board to the Bank typically **adopt** the recommendation proposed by the Bank, and thereby strip these materials of their Exemption 5 status. Since these letters and attached materials of the first group are not within Exemption 5 whenever the advice and recommendation contained in them has been adopted by the Board (as announced in the group-three letters to the Bank from the Board), they cannot be used to bootstrap the Group three letters of the

Board—which undeniably constitute "final decisions"—into Exemption 5. Thus, when the Bank recommendations have been adopted by the Board, the letters and attached materials of the first and third groups lose their Exemption 5 status.

In camera inspection shows that without question the Board has invoked Exemption 5 for a large number of the sought-after documents which do not merit Exemption 5 status. The Board should therefore be ordered to reconstruct its Vaughn Index in the following manner: First, all documents that were passed from the Bank to the Board with regard to any one request with respect to the proposed changes in the Bank's compensation structure should be grouped together with the letter or document used to transfer this information to the Board. Every document referred to in the Bank's letter to the Board, or which the Board has reason to know was attached to such a letter, should be included in each grouping. These groupings are to include, where appropriate, the reports of the fourth group mentioned above. Second, all documents relating to the Board's own examination of individual requests regarding proposed changes in the Bank's compensation scheme should be grouped so that each piece can be readily identified with each of the Bank's requests. Third, letters from the Board to the Bank which announce the Board's decisions with respect to Bank recommendations should be placed in the Index so that they can be readily identified with the corresponding Bank proposals and the examinations of this material by the Board's staff.

Whenever a third-group letter from the Board to the Bank authorizes a change in the Bank's compensation structure which was proposed by the Bank in a first-group letter with attached materials to the Board, and the Board's letter explicitly refers to the Bank's letter, none of this material will be deemed to be within Exemption 5 of sec. 552(b), and the Board is not to invoke this Exemption with respect to this material. Unless this material which is not within Exemption 5 is ultimately found to be within Exemption 4 of sec. 552, the Board will be required to disclose this material to plaintiff.

Since none of the third-group Board letters to the Bank presented for in camera inspection make reference to the Board's own in-house examinations of the Bank's proposed changes in compensation structure (which constitute the second group of material described above), I rule that these materials, which are clearly "predecisional," and "advisory," and which have not been "explicitly adopted" by the Board, are within Exemption 5 of sec. 552, and thus may be withheld from disclosure by the Board.

An order will enter directing the Board to revise and submit to the Court and plaintiff its Vaughn Index as described above within 30 days of this memorandum. The Board is also to present the Court with the responsive documents from 1965, 1970, 1975, and 1980 for in camera inspection.

Order accordingly.

**Andrew A. Caffrey, Ch. J.**

## ORDER

**Caffrey, Ch. J.** In accordance with memoranda filed this date, it is ORDERED:

1. Defendant Board of Governors of the Federal Reserve System is to revise its Vaughn Index according to the instructions given in the accompanying memorandum of this date, and submit the revised Index to the Court and plaintiff within 30 days of the issuance of this order.

2. Defendant is also to present the Court with the responsive documents as described in the revised Vaughn Index from the years 1965, 1970, 1975 and 1980 for in camera inspection.

**Andrew A. Caffrey, Ch. J.**